

COPY
6/22/2010.
(1-2)

## CONTRACT FOR JANITORIAL / MAINTENANCE SERVICES

THIS NON-EXCLUSIVE CONTRACT for JANITORIAL/MAINTENANCE services is made by and between Niagara Cleaning Services Inc., having a place of business at 4869 NW 36th Street Miami Springs, FL 33166; (hereafter "NIAGARA") and MDM Brickell Hotel Group Ltd., d/b/a J.W. Marriott Hotel Miami having a principal place of business at 1109 Brickell Ave., Miami, Florida 33130 (hereafter "MARRIOTT"), commencing on September 9, 2006, and continuing until December 29, 2006, unless earlier terminated under the terms of this agreement (hereinafter "Contract" or "Agreement").

### 1. RETENTION OF SERVICES

MARRIOTT retains NIAGARA for the purpose of providing janitorial/maintenance services as required by MARRIOTT at its premises located at 1109 Brickell Ave., Miami, Florida 33130 (hereinafter, the "Premises") in Food and Beverage Departments (hereinafter referred to as the "Services"), and NIAGARA agrees to render these Services upon the terms and conditions set out in this Agreement.

Contractor shall furnish all regular cleaning and maintenance services on a schedule, as specified by OWNER. Contractor shall abide to schedule at OWNERS' convenience. Contractor shall provide its' own staffing, cleaning supplies, and equipment to commence, diligently pursue, and complete the WORK, (cleaning), at the premises as outlined in "Exhibit A". Performance of services will be in areas as described in "Exhibit A".

OWNER is entering this agreement with the reliance on Contractors' ability to perform the WORK called herein in a professional and workmanlike manner. Contractor agrees to use its; best efforts in providing WORK, and shall provide such WORK in a timely manner in accordance with the generally accepted standards for the profession and all applicable federal, state, and local law regulations affecting Contractor and the WORK; and shall perform the WORK in accordance with all of the terms, covenants, and conditions of this agreement.

Time is of essence in the performance of this Agreement, and Contractor shall be liable to OWNER, for any WORK not completed, unless due to circumstances beyond Contractors control.

PLAINTIFF'S
EXHIBIT
3 for 74
A63 6/25/10

1

6.24.10 NIAGARA PRODUCTION 000072

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

information relevant and material to Niagara's personnel decisions.

NIAGARA further acknowledges and agrees it is not a partner, employee, or agent of MARRIOTT and shall have no authority to incur expenses on MARRIOTT's behalf without prior written consent.

## 5. LIABILITY AND INDEMNITY

MARRIOTT, its officers, employees, servants, agents, successors and assigns shall not be liable for, either in tort or in contract, to NIAGARA its officers, employees, servants, agents, successors and assigns, including, but not limited to, all claims for bodily injuries, sickness, death, damage to or delay or loss of property, costs, legal expenses or attorney's fees.

It is hereby understood that MARRIOTT is not an insurer; that insurance other than as set forth herein shall be obtained by NIAGARA, if any is desired. While MARRIOTT operates under all applicable laws and regulations, it makes no warranty, either express or implied, that the services it furnishes will avert or prevent occurrences, or the consequences therefrom, which may result in loss or damage to NIAGARA or its employees and agents. NIAGARA and MARRIOTT agree that MARRIOTT shall not be held liable for any of NIAGARA or its employee's or agent's, damages or fines, irrespective of origin, to person or to property, whether directly or indirectly caused by performance or nonperformance of obligations imposed by the Agreement.

NIAGARA shall indemnify, defend and hold harmless MARRIOTT, its agents, employees, directors, officers, shareholders, and other related parties, including their successors and assigns from and against any and all such losses, claims, damages, liabilities and expenses, including reasonable attorney fees and costs, arising directly or indirectly with the performance of this Agreement.

## 6. INSURANCE

NIAGARA warrants that it shall maintain throughout the term of this Agreement in a form and in a company satisfactory to MARRIOTT, the following policies of insurance:

Comprehensive general liability insurance, providing coverage for liability with respect to NIAGARA's operations pursuant to this Agreement, with a combined single limit of liability of not less than $1,000,000 Million Dollars per occurrence; and shall name Marriott as an additional insured under said policies at its sole

3

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

## 2.  TERM

The term of this Agreement shall be for four (4) periods of 28 days, effective on September 9, 2006. Thereafter this Agreement will be renewed automatically for successive periods of 28 days unless written notice of cancellation is given by either party not earlier than thirty (30) days prior to the termination of each period.

Notwithstanding the provisions of paragraph 2 herein, either party may terminate this Agreement by giving written notice to the other specifying the date of termination, such notice to be given not less than thirty (30) days prior to the effective date of such termination.

OWNER will not hire or otherwise engage any employee of the Contractor during the term of this Agreement, for period of (8) months, after the termination of Agreement.

## 3.  COMPENSATION

MARRIOTT will pay NIAGARA                    .                    e ___. .        ;) per pay period of 28 days, for the services described in this contract and specified in Exhibit A. NIAGARA shall invoice MARRIOTT on a 28 days period basis with respect to work performed and services rendered by NIAGARA under this Agreement. MARRIOTT will pay NIAGARA'S invoices within thirty days from submission of the invoice.

The compensation as described above is inclusive of all chemicals, labor and equipment needed to provide the service.

## 4.  INDEPENDENT CONTRACTOR

NIAGARA acknowledges and agrees that it has been retained hereunder as an independent contractor.  NIAGARA shall have exclusive responsibility for the hiring, recruiting, training, evaluating and disciplining of its employees, as well as control, direction, scheduling and supervision of such employees. As such independent contractor, NIAGARA shall be responsible for the remuneration of its employees, reimbursement of their expenses, vacations, sick leave, benefits and all other employment policies and considerations, which shall be at the sole discretion of NIAGARA, subject to compliance with all Federal, State and Local laws and ordinances, as well as Marriott's loss prevention policies as set forth in Exhibit A. MARRIOTT may inform Niagara of any

2

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

6.24.10 NIAGARA PRODUCTION 000074

cost and expense; and

Workers' Compensation fully insuring under the laws of the State of Florida, and Employer's Liability Insurance providing a limit of liability of at least USD 500,000; and

Such other insurance as MARRIOTT may request from time to time, with at least 60 days prior notice to NIAGARA.

## 7. GOVERNING LAW

This Agreement is subject to and shall be interpreted in accordance with the laws of the State of Florida. The parties agree that any legal action related to this Agreement must be brought in the appropriate court of Miami-Dade County, Florida. The parties further agree to waive any right to a trial by jury.

## 8. ASSIGNMENT

This Agreement may not be assigned by either party without the prior written consent of the other party.

## 9. AMENDMENTS

This Agreement may not be amended except by an instrument in writing signed by the parties hereto.

## 10. AUTHORITY

NIAGARA represents and warrants that NIAGARA has the full right, power and authority to enter into this Agreement, to perform the obligations as set forth herein and that the execution, delivery and performance by NIAGARA of this Agreement will not conflict with or constitute a default under any contract, agreement or other obligation to which NIAGARA is subject.

## 11. NOTICES

All notices, requests, or other communications (excluding invoices) hereunder shall be in writing and hand delivered or

4

6.24.10 NIAGARA PRODUCTION 000075

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

## 12. SEVERABILITY

All provisions of this Agreement are severable, and the unenforceability or invalidity of any of the provisions shall not affect the validity or enforceability of the remaining provisions. The remaining provisions will be construed in such a manner as to carry out the full intention of the parties. Section titles or references used in this Agreement shall not have substantive meaning or content and are not a part of this Agreement.

## 13. ENTIRE AGREEMENT

This Agreement, including the Services Description attached hereto, constitutes the entire agreement between the parties with respect to its subject matter and supersedes all other representations, understandings or agreements which are not fully expressed herein, whether oral or written. No amendment to this Agreement shall be valid unless in writing and signed by both parties.

MDM BRICKELL HOTEL GROUP, LTD., db

J.W MARRIOTT HOTEL MIAMI

1109 Brickell Ave, Miami
Florida 33130

_____

Authorized Signature

_____

Print Name and Title

_____

Date

NIAGARA CLEANING SERVICES, INC.,

4869 NW 36th Street
Miami Springs, FL 33166

Authorized Signature

Angelica Restrepo/President

Print Name and Title

9/5/06

Date

5

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

6.24.10 NIAGARA PRODUCTION 000076

## EXHBIT "A" SERVICES DESCRIPTION

This Exhibit "A" contains the scope, additional terms and conditions of the services to be provided by Niagara to Marriott.

1. <u>Identification of Niagara Employees</u>. Niagara shall at all times maintain Marriott informed of the identification and additional relevant information, as determined by Marriott from time to time, of each Niagara employee to perform services under this Agreement at the Premises.

2. <u>Loss Prevention</u>. Niagara shall be familiar with Marriott's policies and procedures, as supplied by Marriott, and will ensure that all of Niagara's employees are familiar with these policies and procedures. Further, Niagara will conduct background checks of all Niagara employees to be performing services under this Agreement and will advise Marriott of any subsequent relevant change in status of its employee which would affect or violate any of Marriott's own policies or any Federal, State or local laws or ordinances.
   All Niagara employees shall go through daily Loss Prevention as they enter and exit the Premises.

3. <u>Scope of Services</u>.

All copper floor drains located throughout 2nd floor and 5th floor kitchen will be pressure cleaned on a daily basis. Replacing and disposing of trash liners from trash cans located in Employee Cafeteria, 2nd and 5th Floor Kitchens, on a daily basis.

❑   2nd Floor - Main Kitchen:

o     Commissary Area:

❑        Floor & Floor Mats - Daily
•          Removal of floor mats and pressure cleaning of same to remove grease and grime
•          General sweeping and vacuuming of floor
•          Application of degreaser to floor
•          Wet mopping of floor
•          Pressure cleaning of floor - (daily)
•          Replacing and disposing of trash liners, (daily)

❑        Freezer & Cooler:
•          Sweeping and pressure cleaning of interior of freezer - (once a week)
•          Cleaning of exterior doors and  rubber seal

6

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

☐      2 Ovens & Cooking Station - (daily)
- Cleaning and degreasing of interior ovens - (daily)
- Cleaning and degreasing of cooking station - (daily)
-     Degreasing / Cleaning & Shining of exterior hood - (daily)
- 

☐      1 Overhead Hood - (once a week)
- Pressure cleaning / degreasing of overhead hood

☐      Stainless Steel Prep Areas, Sink, Refrigerators & Ice Machine - (daily)
- Degreasing / Cleaning & Shining of Stainless Steel

o     Dishwashing Area:

☐      Floor & Floor Mats - Daily
- Removal of floor mats and pressure cleaning of same to remove grease and grime
- General sweeping and vacuuming of floor
- Application of degreaser to floor
- Wet mopping of floor
- Pressure cleaning of floor - (daily)

o     Service Bar:

☐      Floor & Floor Mats - Daily
- Removal of floor mats and pressure cleaning of same to remove grease and grime
- General sweeping and vacuuming of floor, (daily)
- Application of degreaser to floor
- Wet mopping of floor
- Pressure cleaning of floor - (daily)

☐      Wiping clean of windows - (once a week)
- Cleaning and degreasing of windows

☐      Stainless Steel Prep Areas & Refrigerators - (daily)
- Degreasing / Cleaning & Shining of Stainless Steel

o     Main Cooking Line (2nd floor):

☐      Interior Ovens / Fryers / Cuve / Salamanders:
-     Cleaning of all interior ovens, (Approx. 4-5 ovens), (twice a week)
-     Degreasing of exterior ovens - (daily)

☐      Cleaning of all Ranges, Grills, & Flat-tops (Daily Basis)

7

6.24.10 NIAGARA PRODUCTION 000078

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

- Application of degreaser to range tops and grills
- Peeling or scraping of any residual grime and/or grease
- Shining of stainless steel

□ Cleaning of "Salamanders", (Daily Basis)
- Cleaning and degreasing of trays and or grills

□ Cleaning of interior Fryers and Cuve:
(When empty/ as per Chef)
- Cleaning and degreasing of interior
- Degreasing and cleaning of exterior stainless steel –
(daily)

□ "Hot" Line Area: (once a month)
- Removal of Coolers
o Pressure cleaning of floor and walls where coolers were
o Cleaning and degreasing stainless steel shelves

□ 5th Floor - Banquet Kitchen:

o Main Cooking Line:

□ Interior Ovens / Fryers / Cuve / Salamanders:
- Cleaning of all interior ovens, (Approx. 4-5 ovens),
(twice a week)
- Degreasing & shining of exterior ovens – (daily)

□ Cleaning of all Ranges, Grills, & Flat-tops (Daily Basis)
- Application of degreaser to range tops and grills
- Peeling or scraping of any residual grime and/or grease
- Shining of stainless steel

□ Cleaning of "Salamanders", (Daily Basis)
- Cleaning and degreasing of trays and or grills

□ Cleaning of interior Fryers and Cuve: (When empty)
- Cleaning and degreasing of interior
- Degreasing and cleaning of exterior stainless steel –
(daily)

□ Stainless Steel Prep Areas & Sink:- (daily)
- Degreasing / Cleaning & Shining of Stainless Steel
- Wiping of Ice Machine, exterior stainless steel
- Cleaning of Coffee Machine area, stainless steel counters

o Dishwashing Area:

□ Floor & Floor Mats - Daily

8

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

-      Removal of floor mats and pressure cleaning of same to remove grease and grime
-      General sweeping and vacuuming of floor
-      Application of degreaser to floor
-      Wet mopping of floor
-      Pressure cleaning of floor - (daily)

☐     Freezer:
-      Sweeping and pressure cleaning of interior of freezer - (once a week)
-      Pressure cleaning of interior racks and trays

9

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



COPY 6/22/2010 (1-2)

# *JANITORIAL / MAINTENANCE SERVICE AGREEMENT*

This JANITORIAL / MAINTENANCE SERVICE AGREEMENT, (the 'agreement"), made effective this _____ day of the month _____, 2005, is by and between, A Florida state corporation, NIAGARA CLEANING SERVICES INC., (Contractor), Seminole Hard Rock Live, Seminole Hard Rock Hotel and Casino , (Owner).

## RECITALS:

A. **OWNER is the operator of** Seminole Hard Rock live, Seminole Hard Rock hotel and Casino **Hollywood, Fl, (the "premises")**

B. CONTRACTOR is in the business of providing cleaning / maintenance services and related services in accordance with the Scope of Work, (the "Work"), hereto attached as Exhibit A.

C. OWNER desires and agrees to engage Contractor to provide the WORK and CONTRACTOR desires to perform the WORK for OWNER pursuant to the terms, covenants and conditions set forth herein.

## AGREEMENT:

In consideration of the terms, covenants and conditions set forth herein, the parties agree as follows:

### 1. WORK TO BE PERFORMED:

a. Contractor shall furnish all regular cleaning and maintenance services on a schedule, as specified by OWNER. Contractor shall abide to schedule at OWNERS' convenience. Contractor shall provide its' own staffing, cleaning supplies, and equipment to commence, diligently pursue, and complete the WORK, (cleaning), at the premises as outlined in Exhibit.

**Performance of services will be in the following areas:**

| | | |
|---|---|---|
| **East concourse** | **West concourse** | **Skybox suite** |
| **Men's locker rooms** | Service elevator | Stairways (4) |
| **Women's locker rooms** | Elevators | Restrooms (18) |
| **First level seating** | Second level seating | Third level seating |
| **Main entrance** | Box office | **Dressing rooms** |
| **Stage area** | Escalators | |



PLAINTIFF'S
EXHIBIT
16 for I°
160 6/25/10

6.24.10 NIAGARA PRODUCTION 000124

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

**OWNER** is entering this agreement with the reliance on Contractors' ability to perform the WORK called herein in a professional and workmanlike manner. Contractor agrees to use its; best efforts in providing WORK, and shall provide such WORK in a timely manner in accordance with the generally accepted standards for the profession and all applicable federal, state, and local law regulations affecting Contractor and the WORK; and shall perform the WORK in accordance with all of the terms, covenants, and conditions of this agreement.

    b.   Time is of essence in the performance of this Agreement, and Contractor shall be liable to OWNER, for any WORK not completed, unless due to circumstances beyond Contractors control.

## 2. TERMS:

This Agreement shall commence on the _____day of _____, 2005, and shall terminate one year from this date, unless sooner terminated as provided herein. This Agreement shall automatically renew for an additional twelve (12) month period, unless terminated by a thirty, (30) day written notice, without cause, by either party.

## 3. MATERIAL PURCHASES:

All cleaning materials to be included into WORK shall be purchased by Contractor. Any chemicals or materials needed for special projects will have an additional cost. Paper products for restrooms and liquid soap will be provided by Owner for Contractor to re-stock accordingly.

## 4. COMPENSATION:

Base annual fee throughout this agreement is inclusive of:

- All Labor
- All equipment needed to perform WORK
- Cleaning chemicals and cleaning supplies needed to complete WORK
- Full time bi-lingual office staff available for any inconveniences
- Bi-lingual Supervision

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

a. Contractor agrees that the price to OWNER, for the cost of WORK, re: weekly/ monthly Janitorial / Maintenance Agreement, shall be as follows: (refer to graphs for complete breakdown of charges)

**Fixed staff day crew 5-attendants + 1** supervisor: _____ **· Monthly**
**Event staffing-(500 seats 7-attedants .**          P~~o~~st Event = $
**Event staffing-(2000 seats 13-attendants** ʰ          **Post Event = 1**
**Event Staffing-(4000 seats 17 attendants**          **/ Post Event =;**
**Event Staffing-(6000 Seats 20 attendants** _____ **ˋPost Event =**

**Additional attendants**, in excess of the number provided above, will be furnished upon **owner's** request, for additional labor cost of        per man hour.

b. **.Owner shall provide a meal for all NCS employees during each shift.**

c. The **OWNER** shall pay the cost of the **WORK** to Contractor as follows:

   o   Amount decided, invoiced on a weekly basis payable net 15 days for a validity of 12 months
   o   Prices may be adjusted in accordance with increases and/or decreases of WORK.

   *d*. Contractor shall submit an invoice of for services agreed upon, on a weekly basis, every Monday for services rendered.

e. The parties agree that the above compensation be paid by check, payable to Contractor, Niagara Cleaning Services Inc. weekly, within submittal of invoice, for services rendered.

f. The compensation as described above is inclusive of all charges for cleaning services, expenses of all payroll taxes, payroll costs, and profits to Contractor. This fee is inclusive of all chemicals, materials, supplies and any floor restoration when and where needed due to **normal** deterioration of floor. General Restoration will be covered throughout the duration of contract.

g. **OWNER shall pay a finance fee of 2% per month for balance outstanding beyond contractual terms of agreement.**

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

5. **SERVICE SCHEDULE:**

   **Niagara Cleaning Services will provide services as follows:**

   Day crew for daily maintenance of Arena will provide services on a schedule agreed upon by both parties. Event attendants and/or post event cleaning will take place on event day.

6. **CHANGE IN THE WORK PERFORMED:**

   The above WORK described is based upon the service area and frequency of services listed. If there are any changes in such areas of services, OWNER and Contractor agree to negotiate a reasonable price adjustment.

7. **INSURANCE:**

   At all times during the Terms of this Agreement, Contractor shall carry and maintain in full force and effect, at its sole expense, the insurance policies that the OWNER requests. Contractor must maintain evidence of continuous insurance coverage throughout this Agreement.

   a. Comprehensive General Liability insurance for $1,000,000.00, per occurrence, including coverage for the following:
      1. Contractual Liability
      2. Personal injury
      3. Property Damage
      4. Commercial Auto
      5. Workers Compensation for all employees

8. **INDEMNITY:**

   Contractor agrees to indemnify, defend and hold harmless the OWNER, its subsidiaries, their respective agents, directors, officers, and any employees, from liabilities or claims related to any employee of contractor. The OWNER is not liable for any loss, costs, damages or injury, including death resulting, a product of negligent acts, errors or omissions of the Contractor of any persons employed by Contractor, while engaged in the WORK on the premises.

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

9. **COMPLIANCE WITH LAW /SAFETY PROGRAM:**

- Contractor warrants that it will comply with all applicable laws and ordinances, rules and regulations having jurisdiction over Premises, Contractor, and WORK.
- Contractor agrees it is responsible for its' own Safety and Health Act Regulations

10. **TERMINATION:**

    a. Force Majeure: Neither party shall be liable in damages or have the right to terminate this Agreement for any delay or default in performing hereunder if such delay or default is caused by conditions beyond its control including, but not limited to Acts of God, Government restrictions (including the denial or cancellation of any export or other necessary license), wars, insurrections and/or any other cause beyond the reasonable control of the party whose performance is affected.

    b. OWNER will not hire or otherwise engage any current or previous employee of the Contractor, for a period of 8 months in accordance with the terms of this Agreement, upon completion of work.

11. **RULES AND REGULATONS:**

All rules and regulations in effect within and on the Premises access thereto regarding passes, badges, list of employees, safety and conduct, shall be strictly enforced and observed by Contractor and its employees

12. **NOTICES:**

Any notice, demand, or communication, which either party may desire or be required to give to the other shall be in writing and will be deemed sufficiently given or rendered if delivered personally or sent via mail, postage prepaid, addressed as follows:

If to OWNER:           Seminole Hardrock Live !
                           One Seminole Way
                           Hollywood Fl. 33024

If to Contractor:       Niagara Cleaning Services
                           8181 NW 36th Street Suite 8-E
                           Miami, FL 33166

Either party shall have the right to designate in writing, served as provided above, a different address to which any notice, demand, or, communication is to be delivered.

6.24.10 NIAGARA PRODUCTION 000128

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

13. **MISCELLANEOUS:**

    a. If any clause or provision of this Agreement is to be held invalid in part or whole, then remaining clauses and provisions, or portions thereof, shall nevertheless be and remain in full force and effect.

    b. No amendment, alteration, modification, or addition to this Agreement shall be valid or binding unless expressed in writing and signed by the parties to be bound thereby.

    c. The captions of each section are added as a matter of convenience only and shall be considered of no effect in the construction of any provision of this Agreement.

    d. If any party hereto shall bring any suit or action against another for relief, declaratory or otherwise, arising out of this Agreement, the prevailing party shall have and recover against the other party, in addition to all court fees and disbursements, such sums as the court may adjudge to be reasonable attorneys' fees.

    e. Any and all warranties, provisions, rights and obligations of the parties herein described and agreed to be performed subsequently to the termination of this Agreement shall survive the termination of this Agreement.

14. **Dispute Resolutions:**

All claims or disputes between the contractor and Owner arising out of or relating to this Agreement, or the breach thereof, shall be decided by arbitration in accordance with the Rules of the American Association currently in effect unless the parties mutually agree otherwise . Arbitration shall take place in Dade County, FL applying the substantive laws of the State of Florida.

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

If not accepted in writing by buyer, this Proposal/ Contract shall automatically expire 30 days from the date submitted, unless extended in writing by Niagara Cleaning Services Inc.

**Niagara Cleaning Services Inc. hereby proposes to furnish the scope of work specified in Exhibit A, as described, for a weekly agreement as described below:**

Fixed staff day crew 5-attendants _____ ....J) - Monthly

Event staffing- (500 seats 7-attendants - $        · Post Event -                    .

 Event staffing- (2000 seats 13-attendants -        .  Post Event ?

Event Staffing-(4000 seats 17 attendants -.        Post Event            .)

Event Staffing-(6000 Seats 20 attendants-        / Post Event - !   .

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the respective dates set forth below, to become effective as of the day and year set forth at beginning of document and subsequently below.

**Commencement Date: This, _____ day of, _____, 2005.**

**Signed by:** _____

**Title:** _____

**Date:** _____

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

 

## PROPOSAL
## MAINTENANCE SERVICE AGREEMENT

This Agreement (the "Agreement") is made and entered into this __, day of _____ , ____, by and between **The Mandarin Oriental Hotel,** located at 500 Brickell Key Drive Miami, FL 33131 and **Niagara Cleaning Services** ("Company") having a principal place of business at 5220 NW 72nd Avenue, #2, Miami, FL, 33166

### PREAMBLE:

This Temporary Labor Services Agreement (this "Agreement") is entered into as of this by_____ and between Niagara Cleaning Services Inc ("Company") and **Mandarin Oriental Hotel,** located at located at 500 Brickell Key Drive Miami, FL 33131

### 1. **Purpose**

This Agreement is entered into specifically for the purpose of Company assigning its employees to perform services for Manager, as described in **Attachment A,** appended hereto and incorporated herein.

### 2. **Scope of Work**

Company's employees will provide labor services for Manager as described in **Attachment A.** This could include, but is not limited to temporary and full-time services.

### 3. **Term**

This Agreement shall become effective on the date entered above and shall continue in full force and effect until terminated as provided herein.



PLAINTIFF'S
EXHIBIT

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



## 4. Termination

A. Notwithstanding any other provisions contained in this Agreement, **The Mandarin Oriental Hotel** may terminate the Agreement, for any reason and without penalty, upon thirty (30) days written notice to the Company. Company may terminate this Agreement upon thirty (30) days written notice to **The Mandarin Oriental Hotel**

B. In the event that this Agreement is terminated, **The Mandarin Oriental Hotel** shall only be obligated to pay for services actually provided by Company up to the effective date of the termination.

## 5. Employees of Company

A. Company will recruit, interview, select, hire and assign employees who, in Company's judgment, are best qualified to perform the services described in Attachment A. As the employer, Company will: (i) maintain all necessary personnel and payroll records for its employees, (ii) withhold from its employees' compensation any taxes, charges or other payroll deductions required by law; (iii) remit such taxes and charges to the appropriate government entity; (iv) pay net wages and fringe benefits, if any, directly to employees; (v) provide for liability insurance as specified in Section 6-Insurance (below) and (vi) provide worker's compensation insurance coverage in amounts as required by law.

B. In connection with the performance of this Agreement, Company will comply with all laws, regulations and orders to the extent applicable to Company.

C. The employees assigned to **The Mandarin Oriental Hotel** account under this Agreement shall remain employees of Company. Company's employees shall not be entitled to participate in any **The Mandarin Oriental Hotel** and its affiliated properties' employee benefit plans, including but not limited to, pension, Section 401(k) profit sharing, retirement, deferred compensation, welfare, insurance, disability, bonus, vacation pay, sick pay, Paid Time Off (PTO), stock purchase, severance pay and other similar plans, programs and agreements, whether reduced to writing or not.

6/24.10 NIAGARA PRODUCTION 000089

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



D.   All Company's employees will be screened prior to being hired.   The screening process shall include, but not be limited to:

   1)   Completion of Company's application which shall provide for references, employment history and disclosure of criminal convictions;

   2)   Reference checks, including at least three (3) previous employers if possible

   3)   Drug testing and criminal background checks, where required for the position. **The Mandarin Oriental Hotel** agrees to reimburse Company for all expenses incurred by Company for drug testing of employees under this Agreement.

E.   Company's employees shall sign an acknowledgment outlining Company's role as employer and recognizing that **The Mandarin Oriental Hotel** is not their employer, as set out in Attachment B. In addition, Company's employees shall sign the Information Systems Protection Acknowledgement form as set out in Attachment C.

F.   Company will instruct all new employees on the proper use of all equipment, supplies and chemicals put in use at **The Mandarin Oriental Hotel**

G.   Company's employees who are assigned to work at **The Mandarin Oriental Hotel** will be held to the same standards and rules as actual employees of **The Mandarin Oriental Hotel**.   Company agrees to remove any of its employees at **The Mandarin Oriental Hotel** request. Company agrees to assist and cooperate with any investigation initiated by **The Mandarin Oriental Hotel**, involving any employee of Company provided to **The Mandarin Oriental Hotel** under this Agreement.

H.   Company agrees to inform its workers of work hours, meal and break procedures and appropriate dress code.

6-24-10 NIAGARA PRODUCTION 000090

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



6.  **Insurance**

    Prior to commencement of this Agreement, Company shall provide **The Mandarin Oriental Hotel** with a certificate of insurance evidencing the existence of valid and enforceable insurance policies as follows:

    A.  Commercial General Liability coverage containing bodily injury and property damage limit of not less than $1,000,000 per occurrence. Such insurance shall name **The Mandarin Oriental Hotel** as an additional insured.

    B.  Worker's Compensation insurance in limits not less than prescribed by State Law.

    C.  Automobile liability insurance for any Company owned or leased vehicles used in conjunction with the service provided by Company hereunder, for bodily injury or property damage with combined single limit of not less than $1,000,000 each occurrence.

    D.  All policies shall be specifically endorsed to provide that the coverage obtained by virtue of the Agreement will be primary and that any insurance carried by **The Mandarin Oriental Hotel** shall be in excess and non- contributory. All policies shall be specifically endorsed to provide that such coverage shall not be canceled or materially changed without at least thirty- (30) day's prior written notice to **The Mandarin Oriental Hotel**. Company shall deliver certificate of insurance and any renewals thereof to the Director of Human Resources or the General Manager for The Mandarin Oriental Hotel.

7.  **Indemnification**

    A.  Company will indemnify, defend, and hold harmless **The Mandarin Oriental Hotel** and its parent company, directors, officers, employees, agents and affiliated partnerships or corporations under common contract from and against all demands, claims, actions, losses, judgment, costs and expenses (including reasonable attorneys' fees) imposed upon or incurred by **The Mandarin Oriental Hotel** arising out of any of the following:

        1) Company's failure to comply with applicable laws, regulations, or orders;

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts


**NIAGARA**
Cleaning Services, Inc.

2) Any negligent act or omission or intentional misconduct on the part of Company, its officers, employees (including its employees on assignment), or agents;

3) Breach of any obligation of Company contained in this Agreement;

4) Any direct claim for workers' compensation benefits or personal injury claims for job-related bodily injury or death asserted against **The Mandarin Oriental Hotel** by any of Company's employees or, in the event of death, by their personal representatives; or any liability of **The Mandarin Oriental Hotel** under any federal or state law requiring notice to employees before termination or layoff from employment.

B.  To facilitate the effective and efficient processing of claims by Company, **The Mandarin Oriental Hotel** agrees to promptly notify Company of any claim it believes may be subject to these indemnification provisions and to share with Company any and all information it may have concerning such a claim. This indemnification shall survive any termination of this Agreement.

8.  **Payment and Billing**

A.  **The Mandarin Oriental Hotel** agrees to pay Company as per Attachment "A" for each hour worked by Company's employees and/or contractual fee. For each labor hour worked over forty (40) hours per individual work week (and in California, over eight (8) hours per individual per work day), **The Mandarin Oriental Hotel** agrees to pay Company one and a half (1-1/2) times the hourly rate, or rate agreed upon by both parties, for any hours worked in excess to 40 per work week established.

B.  Hourly rates will be billed weekly with payment due net 15 days. Monthly Contract Services will be billed semi-monthly, with payment due net 30 days.

@24-10 NIAGARA PRODUCTION 000092

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



9. **Entire Agreement**

   A. Both parties agree that this written Agreement is the total agreement between the parties and that no other document, subsequent modification, or oral agreements exist other than the terms stated herein. Any subsequent modification/amendment to this Agreement shall be reduced to writing, signed by both parties, and attached hereto in order to be effective.

   B. It is understood and agreed that the intent of this Agreement is to include everything necessary for the proper and orderly execution and completion of the services described herein. Any/all services or material described in words which have a well known technical or trade meaning shall be interpreted in accordance with such technical or trade meaning.

10. **Notices**

   Any notice, communication, request or reply ("Notice") made or accepted by either party to the other must be made in writing and shall be effectively given if addressed to the party to be notified and deposited in the United States Postal Service using certified or registered mail, postage prepaid with return receipt requested, or shipped by a recognized overnight courier service, or delivered in person to such party. Any Notice mailed shall be effective, unless otherwise stated in this Agreement, from and after the expiration of three (3) days after it is deposited in a depository of the United States Postal Service or other overnight services as referred to above. Oral or any other notice given in any manner shall be effective only if and when received by the other party to be notified. For purposes of Notice the addresses of the parties shall, until changed as hereinafter provided, be as follows:

   For purposes of Notice the addresses of the parties shall, until changed as hereinafter provided, be as follows:

6/24/10 NIAGARA PRODUCTION 000093

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



**NIAGARA**
Cleaning Services, Inc.

**If to Manager:**  **The Mandarin Oriental Hotel**
500 Brickell Key Drive
Miami, FL 33131

**If to Company:**  **Niagara Services Inc.**
5220 NW 72nd Avenue #A2
Miami, FL 33166
**Attention: Julieta Cespedes**

**With copy to:**  **The Mandarin Oriental Hotel**
500 Brickell Key Drive
Miami, FL 33131

Or, at any other address which may be given by either party to the other in the manner provided above.

11.   **Paragraph Headings**

The paragraph headings throughout this Agreement are for convenience and reference only, and the words contained therein shall in no way be held to explain, modify, amplify, or aid in the interpretation, construction, or meaning of the provisions of this Agreement

12.   **Invalidity of Particular Provision**

If any term or provision of this Agreement, or the application thereof to any person or circumstance, shall, to any extent, be invalid or unenforceable, the remainder of this Agreement, including the application of any such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be effected thereby, and each term and provision of this Agreement shall be valid and enforced to the fullest extent of the law.

---

6.24.10 NIAGARA PRODUCTION 000094

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts


**NIAGARA**
Cleaning Services, Inc.

13. **Choice of Law**

The parties agree that this Agreement shall be interpreted according to the laws of the State in which the Company's employees are working pursuant to this Agreement and that jurisdiction for enforcement of this Agreement lies exclusively in that state. In the event litigation is initiated to enforce any part of this Agreement, the prevailing party is entitled to recover the expenses of litigation including attorney's fees.

14. **Licenses and Permits**

If any governmental license or permit is required for the proper and lawful conduct of Company's business or other activity carried on at The **Mandarin Oriental Hotel**, or if a failure to procure such a license or permit might or would in any way affect the operations of Manager, then Company, at its expense, shall duly procure and thereafter maintain such license or permit and submit same for inspection by Manager. Company, at its sole cost and expense, will at all times comply with the requirements of each such license or permit. Company further agrees to comply promptly with all requirements or any legally constituted public authority and to abide by Manager's Rules and Regulations.

15. **Assignment**

This Agreement may not be assigned or subcontracted by Company in whole or part without prior written consent of **The Mandarin Oriental Hotel**. The Mandarin Oriental Hotel may assign this Agreement without the prior written consent of Company to the owner of the Hotel, a purchaser of the Hotel, a subsequent operator of the Hotel or a lender or mortgagee of the Hotel

16. **Trade Names**

Company acknowledges that **The Mandarin Oriental Hotel**. and its related entities are the sole and exclusive owners of the trademarks, service marks, trade names and logos of **The Mandarin Oriental Hotel** and its subsidiaries and the trademarks, service marks, trade names and logos of the Hotel (together, the "Marks"). Company agrees that it will not make any use of the Marks except with Manager's prior written consent, and that any use of the Marks by Company and the goodwill associated with such use shall inure to **The Mandarin Oriental Hotel** benefit. Company agrees and acknowledges that it shall not acquire any interest in the Marks or the goodwill associated with the Marks by virtue of this Agreement or Company's use of the Marks.

---

9.24.10 NIAGARA PRODUCTION 000095

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



**NIAGARA**
Cleaning Services, Inc.

17.  **Compliance with Laws**

Company shall comply with all applicable laws, statutes, rules, ordinances, codes, orders and regulations of all federal, state, local and other governmental and regulatory authorities and of all insurance bodies applicable to the Hotel premises in performing its obligations under this Agreement.

**Employment Laws.**

Company shall comply with Executive Order 11246, as amended, which is administered by the United States Department of Labor, Office of Federal Contract Compliance Programs (the "OFCCP"), with all relevant rules, regulations and orders pertaining thereto, with all other applicable federal, state and local non-discrimination and affirmative action laws, rules, regulations and orders (collectively, the "EEO/AA Requirements"), and with all wage and hour, immigration and other employment laws. The equal opportunity clause of E.O. 11246 is hereby incorporated by reference. Company shall furnish upon the request of Manager or any appropriate federal, state or local regulatory body information and reports required by the EEO/AA Requirements. Company shall also comply with Executive Order 13201, as amended, which is also administered by the OFCCP, and with all relevant rules, regulations and orders pertaining thereto. The employee notice clause and all other provisions of 29 C.F.R., part 470, are hereby incorporated by reference. Company shall include the provisions of this Section in every subcontract or purchase order so that such provisions shall be binding upon each Company, subcontractor or vendor performing services or providing materials relating to this Agreement and the services provided pursuant to the terms hereof. Company agrees that it will, in response to a request from Manager, provide assurances that Company is complying with state and federal employment laws. Company further affirms its compliance with the immigration laws by signing the Certificate of IRCA compliance attached hereto as Exhibit D

18.  **Independent Company**

In its performance of this Agreement, Company will at all times act in its own capacity and right as an independent Company and nothing contained herein may be construed to make Company an agent, partner, or joint venture of Manager. Neither Company nor its employees will have any claim to Manager's revenues from their work.

6.24.10 NIAGARA PRODUCTION 000096

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



**19. Limitation of Liability**

Company acknowledges and agrees that Manager's total liability under this Agreement shall be limited to Manager's interest in the Hotel. Company further acknowledges and agrees that neither Manager, nor any of its directors, officers, employees, affiliates, representatives or agents shall ever be personally liable to Company for any debts or liabilities arising under or related to this Agreement.

WITNESS THE EXECUTION HEREOF, in any number of counterpart copies, each of which counterpart copy shall be deemed an original for all purposes.

**NIAGARA SERVICES INC**

By:    Julieta Cespedes

Witness: _____ date: _____

**THE MANDARIN ORIENTAL HOTEL**

By: _____

Title:

Witness: _____ date:

6.24.10 NIAGARA PRODUCTION 000097

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



**COPY**

## CONTRACT FOR PERSONNEL SERVICES

THIS NON-EXCLUSIVE CONTRACT for personnel services is made by and between Niagara Cleaning Services, Inc., having a place of business at _____ (hereafter "NIAGARA") and DC Hotels, LLC, d/b/a Courtyard Miami Dadeland with a principal place of business at 9075 South Dadeland Boulevard, Miami, Florida (hereafter "COURTYARD"), commencing on January 1, 2006, and continuing until January 1, 2007, unless earlier terminated under the terms of this agreement (hereinafter "Contract" or "Agreement").

### 1. RETENTION OF SERVICES

COURTYARD retains NIAGARA for the purpose of providing staffing coverage as required by COURTYARD at its premises located at 9075 S. Dadeland Boulevard, Miami, Florida 33156 (hereinafter, the "Premises") in various departments (hereinafter referred to as the "Services"), and NIAGARA agrees to render these Services upon the terms and conditions set out in this Agreement.

### 2. TERM

The term of this Agreement shall be one year, effective on January 1, 2006. Thereafter this Agreement will be renewed automatically for successive periods unless written notice of cancellation is given by either party not earlier than thirty (30) days prior to the termination of each period.

Notwithstanding the provisions of paragraph 2 herein, either party may terminate this Agreement by giving written notice to the other specifying the date of termination, such notice to be given not less than thirty (30) days prior to the effective date of such termination.

### 3. COMPENSATION

COURTYARD will pay NIAGARA at the rates and through the procedure described in Exhibit A, attached hereto and made a part hereof. The rates set out in Exhibit A do not include any charges, fees or taxes imposed or levied by other authorities. Such charges, fees or taxes shall be borne by NIAGARA. NIAGARA shall invoice COURTYARD on a weekly basis with respect to work performed and services rendered by NIAGARA under this Agreement. COURTYARD

1

PLAINTIFF'S
EXHIBIT
10 for Id
Aos 6/25/10

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

NIAGARA acknowledges and agrees that it has been retained hereunder as an independent contractor. NIAGARA shall have exclusive responsibility for the hiring, recruiting, training, evaluating and disciplining of its employees, as well as control, direction, scheduling and supervision of such employees. As such independent contractor, NIAGARA shall be responsible for the remuneration of its employees, reimbursement of their expenses, vacations, sick leave, benefits and all other employment policies and considerations, which shall be at the sole discretion of NIAGARA, subject to compliance with all Federal, State and Local laws and ordinances, as well as COURTYARD's loss prevention policies as set forth in Exhibit A. COURTYARD may inform Niagara of any information relevant and material to Niagara's personnel decisions.

NIAGARA further acknowledges and agrees it is not a partner, employee, or agent of COURTYARD and shall have no authority to incur expenses on COURTYARD's behalf without prior written consent.

## 5. LIABILITY AND INDEMNITY

COURTYARD, its officers, employees, servants, agents, successors and assigns shall not be liable for, either in tort or in contract, to NIAGARA its officers, employees, servants, agents, successors and assigns, including, but not limited to, all claims for bodily injuries, sickness, death, damage to or delay or loss of property, costs, legal expenses or attorney's fees.

It is hereby understood that COURTYARD is not an insurer; that insurance other than as set forth herein shall be obtained by NIAGARA, if any is desired. While COURTYARD operates under all applicable laws and regulations, it makes no warranty, either express or implied, that the services it furnishes will avert or prevent occurrences, or the consequences therefrom, which may result in loss or damage to NIAGARA or its employees and agents. NIAGARA and COURTYARD agree that COURTYARD shall not be held liable for any of NIAGARA or its employee's or agent's, damages or fines, irrespective of origin, to person or to property, whether directly or indirectly caused by performance or nonperformance of obligations imposed by the Agreement.

2

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

will pay NIAGARA'S weekly invoices within fifteen days from submission of the invoice.

## 4. INDEPENDENT CONTRACTOR

NIAGARA acknowledges and agrees that it has been retained hereunder as an independent contractor. NIAGARA shall have exclusive responsibility for the hiring, recruiting, training, evaluating and disciplining of its employees, as well as control, direction, scheduling and supervision of such employees. As such independent contractor, NIAGARA shall be responsible for the remuneration of its employees, reimbursement of their expenses, vacations, sick leave, benefits and all other employment policies and considerations, which shall be at the sole discretion of NIAGARA, subject to compliance with all Federal, State and Local laws and ordinances, as well as COURTYARD's loss prevention policies as set forth in Exhibit A. COURTYARD may inform Niagara of any information relevant and material to Niagara's personnel decisions.

NIAGARA further acknowledges and agrees it is not a partner, employee, or agent of COURTYARD and shall have no authority to incur expenses on COURTYARD's behalf without prior written consent.

## 5. LIABILITY AND INDEMNITY

COURTYARD, its officers, employees, servants, agents, successors and assigns shall not be liable for, either in tort or in contract, to NIAGARA its officers, employees, servants, agents, successors and assigns, including, but not limited to, all claims for bodily injuries, sickness, death, damage to or delay or loss of property, costs, legal expenses or attorney's fees.

It is hereby understood that COURTYARD is not an insurer; that insurance other than as set forth herein shall be obtained by NIAGARA, if any is desired. While COURTYARD operates under all applicable laws and regulations, it makes no warranty, either express or implied, that the services it furnishes will avert or prevent occurrences, or the consequences therefrom, which may result in loss or damage to NIAGARA or its employees and agents. NIAGARA and COURTYARD agree that COURTYARD shall not be held liable for any of NIAGARA or its employee's or agent's, damages or fines, irrespective of origin, to person or to property, whether directly or indirectly caused by performance or nonperformance of obligations imposed by the Agreement.

2

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

NIAGARA shall indemnify, defend and hold harmless COURTYARD, its agents, employees, directors, officers, shareholders, and other related parties, including their successors and assigns from and against any and all such losses, claims, damages, liabilities and expenses, including reasonable attorney fees and costs, arising directly or indirectly with the performance of this Agreement.

## 6. INSURANCE

NIAGARA warrants that it shall maintain throughout the term of this Agreement in a form and in a company satisfactory to COURTYARD the following policies of insurance:

Comprehensive general liability insurance, providing coverage for liability with respect to NIAGARA's operations pursuant to this Agreement, with a combined single limit of liability of not less than $1,000,000 Million Dollars per occurrence; and shall name Courtyard as an additional insured under said policies at its sole cost and expense; and

Workers' Compensation fully insuring under the laws of the State of Florida, and Employer's Liability Insurance providing a limit of liability of at least USD 500,000; and

Such other insurance as COURTYARD may request from time to time, with at least 60 days prior notice to NIAGARA.

## 7. GOVERNING LAW

This Agreement is subject to and shall be interpreted in accordance with the laws of the State of Florida. The parties agree that any legal action related to this Agreement must be brought in the appropriate court of Miami-Dade County, Florida. The parties further agree to waive any right to a trial by jury.

## 8. ASSIGNMENT

This Agreement may not be assigned by either party without the prior written consent of the other party.

## 9. AMENDMENTS

3

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

This Agreement may not be amended except by an instrument in writing signed by the parties hereto.

## 10. AUTHORITY

NIAGARA represents and warrants that NIAGARA has the full right, power and authority to enter into this Agreement, to perform the obligations as set forth herein and that the execution, delivery and performance by NIAGARA of this Agreement will not conflict with or constitute a default under any contract, agreement or other obligation to which NIAGARA is subject.

## 11. NOTICES

All notices, requests, or other communications (excluding invoices) hereunder shall be in writing and hand delivered or addressed and sent by certified or registered mail, postage prepaid and return receipt requested to the parties at the addresses on the signature blocks below or such other addresses as may be specified by written notice.

## 12. SEVERABILITY

All provisions of this Agreement are severable, and the unenforceability or invalidity of any of the provisions shall not affect the validity or enforceability of the remaining provisions. The remaining provisions will be construed in such a manner as to carry out the full intention of the parties. Section titles or references used in this Agreement shall not have substantive meaning or content and are not a part of this Agreement.

## 13. ENTIRE AGREEMENT

This Agreement, including the Services Description attached hereto, constitutes the entire agreement between the parties with respect to its subject matter and supersedes all other representations, understandings or agreements which are not fully expressed herein, whether oral or written. No amendment to this Agreement shall be valid unless in writing and signed by both parties.

4

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

DC HOTELS, LLC, d/b/a
COURTYARD MIAMI DADELAND

NIAGARA CLEANING SERVICES,

9090 S. Dadeland Blvd. #210
Miami, Florida 33156
_____
Authorized Signature

Authorized Signature

Angelica Restrepo/President
Print Name and Title

Print Name and Title

1/31/06
Date

Date

5

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

# EXHBIT "A" SERVICES DESCRIPTION

This Exhibit "A" contains the rates and additional terms and conditions of the services to be provided by Niagara to COURTYARD.

1. Rates:

2. <u>Identification of Niagara Employees</u>. Niagara shall at all times maintain COURTYARD informed of the identification and additional relevant information, as determined by COURTYARD from time to time, of each Niagara employee to perform services under this Agreement at the Premises. The initial list of Niagara employees to perform services at the Premises is attached hereto as Exhibit "B".

3. <u>Loss Prevention</u>. Niagara shall be familiar with COURTYARD's policies and procedures, as supplied by COURTYARD, and will ensure that all of Niagara's employees are familiar with these policies and procedures. Further, Niagara will conduct background checks of all Niagara employees to be performing services under this Agreement and will advise COURTYARD of any subsequent relevant change in status of its employee which would affect or violate any of COURTYARD's own policies or any Federal, State or local laws or ordinances.

All Niagara employees shall go through daily Loss Prevention as they enter and exit the Premises.

4. <u>Use of Chronus or Other Automated Time Management System</u>. Niagara and COURTYARD shall have equal access to the Chronus or other automated time management system (ATMS) to be installed and operating at the Premises for use by Niagara employees at the Premises. All of Niagara's employees subject of this Agreement shall punch in Niagara's ATMS at the Premises. Niagara shall provide and maintain the ATMS at its own cost and expense.

5. Niagara should hold weekly meetings with Courtyard managers to forecast the staffing requirements for the following week. A purchase order should be provided to Niagara in writing 1 week in advance to the expected service.

6

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



## *MAINTENANCE SERVICE AGREEMENT*

This JANITORIAL / MAINTENANCE SERVICE AGREEMENT, (the 'agreement"), made effective this _____ day of the month _____, 2006, is by and between, A Florida state corporation, NIAGARA CLEANING SERVICES INC., (Contractor), and Kendall Regional Medical Center

### RECITALS:

OWNER is the operator of Kendall Regional Medical Center, located in Miami, Florida, (the "premises")

A. CONTRACTOR is in the business of providing cleaning / maintenance services and related services in accordance with the Scope of Work, (the "Work"), hereto attached as Exhibit A.

B. OWNER desires and agrees to engage Contractor to provide the WORK and CONTRACTOR desires to perform the WORK for OWNER pursuant to the terms, covenants and conditions set forth herein.

### AGREEMENT:

In consideration of the terms, covenants and conditions set forth herein, the parties agree as follows:

### 1. WORK TO BE PERFORMED:

a. Contractor shall furnish all regular cleaning and maintenance services on a schedule, as specified by OWNER. Contractor shall abide to schedule at OWNERS' convenience. Contractor shall provide its' own staffing, cleaning supplies, and equipment to commence, diligently pursue, and complete the WORK, (cleaning), at the premises as outlined in **"Exhibit A"**

Performance of services will be in areas as described in **"Exhibit A"**

b. OWNER is entering this agreement with the reliance on Contractors' ability to perform the WORK called herein in a professional and workmanlike manner. Contractor agrees to use its; best efforts in providing WORK, and shall provide such WORK in a timely manner in accordance with the generally accepted standards for the profession and all applicable federal, state, and local law regulations affecting Contractor and the WORK; and shall perform the WORK in accordance with all of the terms, covenants, and conditions of this agreement.

PLAINTIFF'S EXHIBIT

13 for Jd
A+S 6/25/10

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

c. Time is of essence in the performance of this Agreement, and Contractor shall be liable to OWNER, for any WORK not completed, unless due to circumstances beyond Contractors control.

## 2. TERMS:

This Agreement shall commence on the _____ day of _____, 2006, and shall terminate one year from this date, unless sooner terminated as provided herein. This Agreement shall automatically renew for an additional twelve (12) month period, unless terminated by a thirty, (30) day written notice, without cause, by either party.

## 3. MATERIAL PURCHASES:

All cleaning materials to be included into WORK shall be purchased by Contractor.

## 4. COMPENSATION:

- All equipment needed to perform WORK
- Cleaning chemicals and cleaning supplies needed to complete WORK
- Full time bi-lingual office staff available for any inconveniences
- Bi-lingual Supervision

a. Contractor agrees that the price to OWNER, for the cost of WORK Maintenance Agreement, shall be as follows:

_____

b. Contractor agrees that the price to OWNER for the cost of janitorial and Maintenance Services shall be of: $

c. The OWNER shall pay the cost of the WORK to Contractor as follows:
   i. Amount decided, per pay period; valid for one year from date of commencement
   ii. Prices may be adjusted in accordance with the reduction or increases in WORK

d. Contractor shall submit an invoice at the end of each pay period, for payment net 15 days.

e. The parties agree that the above compensation be paid by check, payable to Contractor, Niagara Cleaning Services Inc. within 15 business days upon submittal of invoice.

f. The compensation as described above is inclusive of all charges for cleaning services, expenses of all payroll taxes, payroll costs, and profits to Contractor. This fee is inclusive of all chemicals, labor and equipment needed to provide work.

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

## 5. CHANGE IN THE WORK PERFORMED:

The above WORK described is based upon the service area and frequency of services listed in "EXHIBIT A". If there are any changes in such areas of services, OWNER and Contractor agree to negotiate a reasonable price adjustment.

## 6. INSURANCE:

At all times during the Terms of this Agreement, Contractor shall carry and maintain in full force and effect, at its sole expense, the insurance policies that the OWNER requests. Contractor must maintain evidence of continuous insurance coverage throughout this Agreement.

    a. Comprehensive General Liability insurance for $1,000,000.00, per occurrence, including coverage for the following:
- i. Contractual Liability
- ii. Commercial Auto
- iii. Personal Injury
- iv. Property Damage
- v. Independent contracts
- vi. Premises operations

## 7. INDEMNITY:

Contractor agrees to indemnify, defend and hold harmless the OWNER, its subsidiaries, their respective agents, directors, officers, and any employees, from liabilities or claims related to any employee of contractor. The OWNER is not liable for any loss, costs, damages or injury, including death resulting, a product of negligent acts, errors or omissions of the Contractor of any persons employed by Contractor, while engaged in the WORK on the premises.

## 8. COMPLIANCE WITH LAW /SAFETY PROGRAM:

- Contractor warrants that it will comply with all applicable laws and ordinances, rules and regulations having jurisdiction over Premises, Contractor, and WORK.
- Contractor agrees it is responsible for its own Safety and Health Act Regulations

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

## 9. TERMINATION:

  a.  If OWNER is dissatisfied with the quality of services, OWNER may inform Contractor in writing of the specific areas of dissatisfaction. If Contractor fails to correct the deficiencies within 15 days, OWNER may terminate this Agreement with 15 days notice to Contractor.

  b.  OWNER may terminate this Agreement at any time if the Premises are destroyed or with 30 days notice to Contractor if OWNER vacates the Premises.

  c.  Contractor may terminate this Agreement with 30 days notice to OWNER and may terminate services at any time without notice for non-payment.

  d.  Either party may terminate this Agreement with or without cause by giving the other party at least 30 days prior written notice. Upon such termination, Contractor shall be entitled to compensation for WORK performed up to date of termination.

  e.  OWNER will not hire or otherwise engage any employee of the Contractor during the term of this Agreement, **for period of (8) months,** after the termination of Agreement.

## 10.  RULES AND REGULATONS:

All rules and regulations in effect within and on the Premises access thereto regarding passes, badges, list of employees, safety and conduct, shall be strictly enforced and observed by Contractor and its employees.

## 11.  NOTICES:

Any notice, demand, or communication, which either party may desire or be required to give to the other shall be in writing and will be deemed sufficiently given or rendered if delivered personally or sent via mail, postage prepaid, addressed as follows:

| If to OWNER: | Kendall Regional Medical Center |
| | 11750 Bird Road |
| | Miami-Fl 33175 |
| If to Contractor: | Niagara Cleaning Services Inc. |
| | 5220 NW 72 Avenue Bay·# 2 |
| | Miami , FL 33166 |

Either party shall have the right to designate in writing, served as provided above, a different address to which any notice, demand, or, communication is to be delivered.

6.24.10 NIAGARA PRODUCTION 000084

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

## 12.    MISCELLANEOUS:

a.  If any clause or provision of this Agreement is to be held invalid in part or whole, then remaining clauses and provisions, or portions thereof, shall nevertheless be and remain in full force and effect.

b.  No amendment, alteration, modification, or addition to this Agreement shall be valid or binding unless expressed in writing and signed by the parties to be bound thereby.

c.  The captions of each section are added as a matter of convenience only and shall be considered of no effect in the construction of any provision of this Agreement.

d.  If any party hereto shall bring any suit or action against another for relief, declaratory or otherwise, arising out of this Agreement, the prevailing party shall have and recover against the other party, in addition to all court fees and disbursements, such sums as the court may adjudge to be reasonable attorneys' fees.

e.  Any and all warranties, provisions, rights and obligations of the parties herein described and agreed to be performed subsequently to the termination of this Agreement shall survive the termination of this Agreement.

f.  Time is of essence with respect to the performance of each of the covenants and agreements herein set forth.

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

If not accepted in writing by buyer, this Proposal/ Contract shall automatically expire 30 days from the date submitted, unless extended in writing by Niagara Cleaning Services Inc.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the respective dates set forth below, to become effective as of the day and year set forth at beginning of document and subsequently below.

**Signed by:** _____

     **Title:** _____

     **Date:** _____

Commencement date: This, ____day of, ____, 2006

6.24.10 NIAGARA PRODUCTION 000086

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

 **NIAGARA**
Cleaning Services, Inc.

 **COPY** 6/22/2010 (1-2)

## *AGREEMENT FOR TEMPORARY LABOR SERVICES*

This Agreement (the "Agreement") is made and entered into this , day of **, 2008,** by and between **The Penguin Hotel Management ("The Penguin Hotel Management, LLC") having a principal place of business at 1418 Ocean Drive , Miami, Fl 33139** and **Niagara Cleaning Services Inc,** ("Company") having a principal place of business at **5220 NW 72nd Avenue, #A2, Miami, FL, 33166.**

1. Purpose

   This Agreement is entered into specifically for the purpose of Company assigning its employees to perform services for at The President Hotel and Penguin Hotel Management, as described in Attachment A, appended hereto.

2. Scope of Work

   Company's employees will provide labor services for The President Hotel and Penguin Hotel Management, (the "Hotel") as described in Attachment A, appended hereto. This could include, but is not limited to temporary and full-time services.

3. Term

   This Agreement shall become effective on the date entered above and shall continue in full force and effect until terminated as provided herein.

4. Termination

   A. Notwithstanding any other provisions contained in this Agreement, The Penguin Hotel Management may terminate the Agreement, for any reason and without penalty, upon thirty (30) days written notice to the Company. Company may terminate this Agreement upon thirty (30) days written notice to The Penguin Hotel Management.

   B. In the event that this Agreement is terminated, The Penguin Hotel Management shall only be obligated to pay for services actually provided by Company up to the effective date of the termination.


PLAINTIFF'S EXHIBIT

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



6.24.10 NIAGARA PRODUCTION 000104

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



## 5. Employees of Company

A. Company will recruit, interview, select, hire and assign employees who, in Company's judgment, are best qualified to perform the services described in Attachment A. As the employer, Company will: (i) maintain all necessary personnel and payroll records for its employees, (ii) withhold from its employees' compensation any taxes, charges or other payroll deductions required by law; (iii) remit such taxes and charges to the appropriate government entity; (iv) pay net wages and fringe benefits, if any, directly to employees; (v) provide for liability insurance as specified in Section 6-Insurance (below) and (vi) provide worker's compensation insurance coverage in amounts as required by law.

B. In connection with the performance of this Agreement, Company will comply with all laws, regulations and orders to the extent applicable to Company.

C. The employees assigned to The Penguin Hotel Management under this Agreement shall remain employees of Company. Company's employees shall not be entitled to participate in any of The Penguin Hotel Management's. employee benefit plans, including but not limited to, pension, Section 401(k) profit sharing, retirement, deferred compensation, welfare, insurance, disability, bonus, vacation pay, sick pay, Paid Time Off (PTO), stock purchase, severance pay and other similar plans, programs and agreements, whether reduced to writing or not.

D. All Company's employees will be screened prior to being hired. The screening process shall include, but not be limited to:

1) Completion of Company's application which shall provide for references, employment history and disclosure of criminal convictions;

2) Reference checks, including at least three (3) previous employers if possible; and

3) Drug testing and criminal background checks, where required for the position. The Penguin Hotel Management agrees to reimburse Company for all expenses incurred by Company for drug testing of employees under this Agreement.

9/24/10 NIAGARA PRODUCTION 000105

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts


**NIAGARA**
Cleaning Services, Inc.

E.  Company's employees shall sign an acknowledgment outlining Company's role as employer and recognizing that The Penguin Hotel Management is not their employer, as set out in Attachment B. In addition, Company's employees shall sign the Information Systems Protection Acknowledgement form as set out in Attachment C.

F.  Company will instruct all new employees on the proper use of all equipment, supplies and chemicals used by The Penguin Hotel Management.

G.  Company's employees who are assigned to work at The Penguin Hotel Management will be held to the same standards and rules as employees of The Penguin Hotel Management. Company agrees to remove any of its employees at The Penguin Hotel Management's request. Company agrees to assist and cooperate with any investigation initiated by The Penguin Hotel Management involving any employee of Company provided to The Penguin Hotel Management under this Agreement.

H.  Company agrees to inform its workers of work hours, meal and break procedures and appropriate dress code.

6.  <u>Insurance</u>

Prior to commencement of this Agreement, Company shall provide The Penguin Hotel Management with a certificate of insurance evidencing the existence of valid and enforceable insurance policies as follows:

A.  Commercial General Liability coverage containing bodily injury and property damage limit of not less than $1,000,000 per occurrence. Such insurance shall name The Penguin Hotel Management as an additional insured.

B.  Worker's Compensation insurance in limits not less than prescribed by State Law.

C.  Automobile liability insurance for any Company owned or leased vehicles used in conjunction with the service provided by Company hereunder, for bodily injury or property damage with combined single limit of not less than $1,000,000 each occurrence.

---

NIAGARA PRODUCTION 000106

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



D. All policies shall be specifically endorsed to provide that the coverage obtained by virtue of the Agreement will be primary and that any insurance carried by The Penguin Hotel Management shall be in excess and non-contributory. All policies shall be specifically endorsed to provide that such coverage shall not be cancelled or materially changed without at least thirty- (30) day's prior written notice to The Penguin Hotel Management. Company shall deliver certificate of insurance and any renewals thereof to the Director of Human Resources or the General Manager for The Penguin Hotel Management.

7. <u>Indemnification</u>

A. Company will indemnify, defend, and hold harmless The Penguin Hotel Management and its parent
company, directors, officers, employees, agents and affiliated partnerships or corporations under common contract from and against all demands, claims, actions, losses, judgment, costs and expenses (including reasonable attorneys' fees) imposed upon or incurred by The Penguin Hotel Management arising out of any of the following:

   1) Company's failure to comply with applicable laws, regulations, or orders;

   2) Any negligent act or omission or intentional misconduct on the part of Company, its officers, employees (including its employees on assignment), or agents;

   3) Breach of any obligation of Company contained in this Agreement;

   4) Any direct claim for workers' compensation benefits or personal injury claims for job-related bodily injury or death asserted against The Penguin Hotel Management by any of Company's employees or, in the event of death, by their personal representatives; or any liability of The Penguin Hotel Management under any federal or state law requiring notice to employees before termination or layoff from employment.

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



B.  To facilitate the effective and efficient processing of claims by Company, The Penguin Hotel Management agrees to promptly notify Company of any claim it believes may be subject to these indemnification provisions and to share with Company any and all information it may have concerning such a claim. This indemnification shall survive any termination of this Agreement.

8.  **Payment and Billing**

A.  The Penguin Hotel Management agrees to pay Company as per Attachment "A" for each hour worked by Company's employees. For each labor hour worked over forty (40) hours per individual work week (and in California, over eight (8) hours per individual per work day), The Penguin Hotel Management agrees to pay Company one and a half (1-1/2) times the hourly rate.

B.  This fee will be billed weekly with payment due in 30 days.

9.  **Entire Agreement**

A.  Both parties agree that this written Agreement is the total agreement between the parties and that no other document, subsequent modification, or oral agreements exist other than the terms stated herein. Any subsequent modification/amendment to this Agreement shall be reduced to writing, signed by both parties, and attached hereto in order to be effective.

B.  It is understood and agreed that the intent of this Agreement is to include everything necessary for the proper and orderly execution and completion of the services described herein. Any/all services or material described in words which have a well known technical or trade meaning shall be interpreted in accordance with such technical or trade meaning.

10.  **Notices**

A.  Any notice, communication, request or reply ("Notice") made or accepted by either party to the other must be made in writing and shall be effectively given if addressed to the party to be notified and deposited in the United States Postal Service using certified or registered mail, postage prepaid with return receipt requested, or shipped by a recognized overnight courier service, or delivered in person to such party. Any Notice mailed shall be effective, unless otherwise stated in this agreement,

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



from and after the expiration of three (3) days after it is deposited in a depository of the United States Postal Service or other overnight services as referred to above. Oral or any other notice given in any manner shall be effective only if and when received by the other party to be notified. For purposes of Notice the addresses of the parties shall, until changed as hereinafter provided, be as follows:

If to The Penguin Hotel Management:

**The Penguin Hotel Management, LLC**
1418 Ocean Drive
Miami, FL 33139
**Attn: Paola Cordoba**

If to Company:

**Niagara Cleaning Services Inc**
**5220 NW 72nd Avenue #A2**
**Miami, FL 33166**
Attention: Julieta Cespedes

Or at any other address which may be given by either party to the other in the manner provided above.

11.    Paragraph Headings

    The paragraph headings throughout this Agreement are for convenience and reference only, and the words contained therein shall in no way be held to explain, modify, amplify, or aid in the interpretation, construction, or meaning of the provisions of this Agreement.

12.    Invalidity of Particular Provision

    If any term or provision of this Agreement, or the application thereof to any person or circumstance, shall, to any extent, be invalid or unenforceable, the remainder of this Agreement, the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be effected thereby, and each term and provision of this Agreement shall be valid and enforced to the fullest extent of the law.

000132 NIAGARA PRODUCTION 000109

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



**NIAGARA**
Cleaning Services, Inc.

13.  Choice of Law

The parties agree that this Agreement shall be interpreted according to the laws of the State in which the Company's employees are working pursuant to this Agreement and that the Jurisdiction for enforcement of this Agreement lies exclusively in that state. In the event litigation is initiated to enforce any part of this Agreement, the prevailing party is entitled to recover the expenses of litigation including attorney's fees.

14.  Licenses and Permits

If any governmental license or permit is required for the proper and lawful conduct of Company's business or other activity carried on at The Penguin Hotel Management, or if a failure to procure such a license or permit might or would in any way affect the operations of The Penguin Hotel Management, then Company, at its expense, shall duly procure and thereafter maintain such license or permit and submit same for inspection by The Penguin Hotel Management. Company, at its sole cost and expense, will at all times comply with the requirements of each such license or permit. Company further agrees to comply promptly with all requirements or any legally constituted public authority and to abide by The Penguin Hotel Management's Rules and Regulations.

15.  Assignment and Subcontracts

This Agreement may not be assigned or subcontracted by Company in whole or part without prior written consent of The Penguin Hotel Management. The Penguin Hotel Management may assign this Agreement without the prior written consent of Company to the owner of the Hotel, a purchaser of the Hotel, a subsequent operator of the Hotel or a lender or mortgagee of the Hotel.

16.  Trade Names

Company expressly recognizes and acknowledges that its rights under this Agreement shall not confer upon Company any right in, or the right to use the Hotel's trademarks, the name "The Penguin Hotel Management", (the "Marks"), and any use of the Marks for identification purposes shall only be done with the express prior written consent of The Penguin Hotel Management, and that any use of the Marks by Company and the goodwill associated with such use shall inure to The Penguin Hotel Management's benefit. Company acknowledges that "The Penguin Hotel Management" is a federally registered trademark of The Penguin Hotel Management.

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



**NIAGARA**
Cleaning Services, Inc.

17. <u>**Compliance with Laws**</u>
Company shall comply with all applicable laws, statutes, rules, ordinances, codes, orders and regulations of all federal, state, local and other governmental and regulatory authorities and of all insurance bodies applicable to the Hotel premises in performing its obligations under this Agreement.

**Employment Laws.**
Company shall comply with Executive Order 11246, as amended, which is administered by the United States Department of Labor, Office of Federal Contract Compliance Programs (the "OFCCP"), with all relevant rules, regulations and orders pertaining thereto, with all other applicable federal, state and local non-discrimination and affirmative action laws, rules, regulations and orders (collectively, the "EEO/AA Requirements"), and with all wage and hour, immigration and other employment laws. The equal opportunity clause of E.O. 11246 is hereby incorporated by reference. Company shall furnish upon the request of Manager or any appropriate federal, state or local regulatory body information and reports required by the EEO/AA Requirements. Company shall also comply with Executive Order 13201, as amended, which is also administered by the OFCCP, and with all relevant rules, regulations and orders pertaining thereto. The employee notice clause and all other provisions of 29 C.F.R., part 470, are hereby incorporated by reference. Company shall include the provisions of this Section in every subcontract or purchase order so that such provisions shall be binding upon each Company, subcontractor or vendor performing services or providing materials relating to this Agreement and the services provided pursuant to the terms hereof. Company agrees that it will, in response to a request from Manager, provide assurances that Company is complying with state and federal employment laws. Company further affirms its compliance with the immigration laws by signing the Certificate of IRCA compliance attached hereto as Exhibit D.

18. <u>**Independent Company**</u>

In its performance of this Agreement, Company will at all times act in its own capacity and right as an independent Company and nothing contained herein may be construed to make Company an agent, partner, or joint ventured of The Penguin Hotel Management. Neither Company nor its employees will have any claim to The Penguin Hotel Management's revenues from their work.

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



19. <u>Limitation of Liability</u>.  Company acknowledges and agrees that The Penguin Hotel Management's total liability under this Agreement shall be limited to The Penguin Hotel Management's interest in the Hotel.  Company further acknowledges and agrees that neither The Penguin Hotel Management, nor any of its directors, officers, employees, affiliates, representatives or agents shall ever be personally liable to Company for any debts or liabilities arising under or related to this Agreement.

**WITNESS THE EXECUTION HEREOF,** in any number of counterpart copies, each of which counterpart copy shall be deemed an original for all purposes.

**NIAGARA CLEANING SERVICES INC.**


By:  Julieta Cespedes/ Sales Associated


**THE PENGUIN HOTEL MANAGEMENT**

By: MARC H. FRIEDY

Title: ~~General Manager~~ Managing Member

6:24.10 NIAGARA PRODUCTION 000112

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts





## *PERSONNEL SERVICE AGREEMENT*

This PERSONNEL SERVICE AGREEMENT, (the 'agreement"), made effective this _3rd_ day of the month _Nov._ , 2006, is by and between, A Florida state corporation, NIAGARA CLEANING SERVICES INC., (Contractor), and hotel Intercontinental Downtown Miami, (Owner).

### RECITALS:

A. **OWNER is the operator of Hotel Inter-Continental Miami, located in Miami, Florida, (the "premises")**

B. CONTRACTOR is in the business of providing personnel services in accordance with the Scope of Work, (the "Work"), as requested.

C. OWNER desires and agrees to engage Contractor to provide the WORK and CONTRACTOR desires to provide the PERSONNEL for OWNER pursuant to the terms, covenants and conditions set forth herein.

### AGREEMENT:

**In consideration of the terms, covenants and conditions set forth herein, the parties agree as follows:**

1. **WORK TO BE PERFORMED:**

   *a.* Contractor shall provide all personnel as requested in compliance to schedule provided by OWNER. Contractor shall abide to schedule at OWNERS' request. OWNER shall provide its' cleaning supplies, and equipment to commence, diligently pursue, and complete the WORK at on the premises as OWNER requested.

PERSONNEL FOR THE FOLLOWING DEPARTMENTS:

❖ **Housekeeping Personnel:**     **per man hour – 40 hours a week / OT $**     **per man hour**

- Housemaids
- Housemen
- Laundry Personnel



PLAINTIFF'S
EXHIBIT
16 for JU
Ase  6/25/10

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



❖ **General Cleaning Personnel:**
- **Exterior P/C**                  0 per man hour / OT :        per man hour
- **Landscaping personnel**        per man hour / OT :        per man hour
- **Exterior labor**               per man hour / OT :        per man hour

❖ **Banquet Personnel:**
- **Servers**                 :    0 per man hour
- **Stewarding**                   per man hour
- **Bartenders**                   per man hour
- **Busboys**             $         per man hour

❖ **Kitchen Personnel:**
- **General cleaning personnel**          per man hour
- **Line cooks**                          per man hour
- **Cook assistants**            :     ) per man hour

b. OWNER is entering this agreement with the reliance on Contractors' ability to provide appropriate personnel called herein in a professional and workmanlike manner. Contractor agrees to use its; best efforts in providing personnel, and shall provide such personnel in a timely manner in accordance with the generally accepted standards for the positions. Contractor will take full responsibility of all applicable federal, state, and local law regulations affecting Contractor and said personnel; and shall abide in accordance with all of the terms, covenants, and conditions of this agreement.

c. Dependability is of essence in the performance of this Agreement, and Contractor shall provide all requested personnel to OWNER, unless due to circumstances beyond Contractors control are present.

## 2. TERMS:

This Agreement shall commence on the ___3rd___ day of ___Nov.___, 2006, and shall terminate one year from this date, unless sooner terminated as provided herein. This Agreement shall automatically renew for an additional twelve (12) month period, unless terminated by a thirty, (30) day written notice, without cause, by either party.

## 3. MATERIAL PURCHASES:

All materials to be included into WORK shall be purchased OWNER. Notwithstanding of anything in this section, to the contrary,



### 4. COST OF THE WORK:

**Owner agrees to the rates specified under Agreement Section 1., for all personnel requested.**

    a. Contractor agrees that the price to OWNER, for the cost of WORK shall be as follows:

    (Specified in Agreement, section 1)

    b. The **OWNER** shall pay the cost of the **WORK** to Contractor as follows:
        i. Hourly per man hour rate according to position; valid for twelve (12) months

    c. Contractor shall submit an invoice on a weekly basis, in accordance with Intercontinental Hotel work week, payable net 15 days.

    d. The parties agree that the above compensation be paid by check, payable to Contractor, Niagara Cleaning Services Inc. within 15 days upon submittal of invoice.

    e. The compensation as described above is inclusive of all charges for services, expenses of all payroll taxes, payroll costs, insurances and profits to Contractor.

### 5. CHANGE IN THE WORK PERFORMED:

If there are any changes in such areas of services, OWNER and Contractor agree to negotiate a reasonable price adjustment.

### 6. INSURANCE:

**At all times during the Terms of this Agreement, Contractor shall carry and maintain in full force and effect, at its sole expense, the insurance policies that the OWNER requests. Contractor must maintain evidence of continuous insurance coverage throughout this Agreement.**

    a. Comprehensive General Liability insurance for $1,000,000.00, per occurrence, including coverage for the following:
        i. Contractual Liability
        ii. Personal Injury
        iii. Property Damage
        iv. Independent contracts
        v. Premises operations

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



## 7. INDEMNITY:

Contractor agrees to indemnify, defend and hold harmless the OWNER, its subsidiaries, their respective agents, directors, officers, and any employees, from liabilities or claims related to any employee of contractor. The OWNER is not liable for any loss, costs, damages or injury, including death, resulting from a product of negligent acts, errors or omissions of the Contractor of any persons employed by Contractor, while engaged in the WORK on the premises.

## 8. COMPLIANCE WITH LAW /SAFETY PROGRAM:

- Contractor warrants that it will comply with all applicable laws and ordinances, rules and regulations having jurisdiction over Premises, Contractor, and WORK.
- Contractor agrees it is responsible for its own Safety and Health Act Regulations

## 9. TERMINATION:

a. If OWNER is dissatisfied with the quality of services, OWNER may inform Contractor in writing of dissatisfaction. If Contractor fails to correct the deficiencies within 15 days, OWNER may terminate this Agreement with 15 days notice to Contractor.

b. OWNER may terminate this Agreement at any time if the Premises are destroyed or with 30 days notice to Contractor if OWNER vacates the Premises.

c. Contractor may terminate this Agreement with 30 days notice to OWNER and may terminate services at any time without notice for non-payment.

d. Either party may terminate this Agreement with or without cause by giving the other party at least 30 days prior written notice. Upon such termination, Contractor shall be entitled to compensation for WORK performed up to date of termination.

e. OWNER will not hire or otherwise engage any employee of the Contractor during the term of this Agreement or a period of (6) months following the termination of Agreement.

## 10. RULES AND REGULATONS:

All rules and regulations in effect within and on the Premises regarding passes, badges, list of employees, safety and conduct, shall be strictly enforced and observed by Contractor and its employees.

624.10 NIAGARA PRODUCTION 000068

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



## 11. NOTICES:

**Any notice, demand, or communication, which either party may desire or be required to give to the other shall be in writing and will be deemed sufficiently given or rendered if delivered personally or sent via mail, postage prepaid, addressed as follows:**

**If to OWNER:**              Intercontinental Downtown Miami
                              100 Chopin Plaza
                              Miami, FL 33131

**If to Contractor:**         Niagara Cleaning Services Inc.
                              5220 NW 72 Avenue #A2
                              Miami, FL 33166

Either party shall have the right to designate in writing, served as provided above, a different address to which any notice, demand, or, communication is to be delivered.

## 12. MISCELLANEOUS:

a. If any clause or provision of this Agreement is to be held invalid in part or whole, then remaining clauses and provisions, or portions thereof, shall nevertheless be and remain in full force and effect.

b. No amendment, alteration, modification, or addition to this Agreement shall be valid or binding unless expressed in writing and signed by the parties to be bound thereby.

c. The captions of each section are added as a matter of convenience only and shall be considered of no effect in the construction of any provision of this Agreement.

d. If any party hereto shall bring any suit or action against another for relief, declaratory or otherwise, arising out of this Agreement, the prevailing party shall have and recover against the other party, in addition to all court fees and disbursements, such sums as the court may adjudge to be reasonable attorneys' fees.

e. Any and all warranties, provisions, rights and obligations of the parties herein described and agreed to be performed subsequently to the termination of this Agreement shall survive the termination of this Agreement.

f. Time is of essence with respect to the performance of each of the covenants and agreements herein set forth.

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



**NIAGARA**
Cleaning Services, Inc.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the respective dates set forth below, to become effective as of the day and year set forth at beginning of document and subsequently below.

## HOTEL INTER-CONTINENTAL MIAMI

Signed by: _____

Title: _Director of Human Resources_

Date: _11/3/06_

## NIAGARA CLEANING SERVICES INC.

Signed by: _____

Title: _Sales Associate_

Date: _11-03-06_

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



# INTERCONTINENTAL.
### M I A M I

Addendum to service agreement with Niagara Cleaning Services, Inc.

### Section 4

**Item d.**  The Intercontinental Miami agrees to pay any due payments and invoices, as described in the agreement, within 30 days upon receipt of invoice.

Niagara Cleaning Services, Inc.

Signed: _Hortentia Cespedes_

Title: _Sales Associate_

Date: _11-03-06._

### InterContinental Miami

Signed: _[signature]_

Title: _HR Director_

Date: _11/3/06_

*100 Chopin Plaza, Miami, Fl. 33131 USA   Tel: (305) 577.1000   Fax: (305) 577.0384*

www.intercontinental.com • miami@interconti.com

6.24.10 NIAGARA PRODUCTION 000071

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

COPY 6/22/20?
(1-2)

# JANITORIAL / MAINTENANCE SERVICE AGREEMENT

This JANITORIAL / MAINTENANCE SERVICE AGREEMENT, (the 'agreement"), made effective this _____ day of the month _____, 200__, is by and between, A Florida state corporation, NIAGARA CLEANING SERVICES INC., (Contractor), and INTERCONTINENTAL WEST MIAMI.

## RECITALS:

A. OWNER is the operator of Intercontinental West Miami., located in Miami, Florida, (the "premises")

B. CONTRACTOR is in the business of providing cleaning / maintenance services and related services in accordance with the Scope of Work, (the "Work"), hereto attached as **Exhibit A.**

C. OWNER desires and agrees to engage Contractor to provide the WORK and CONTRACTOR desires to perform the WORK for OWNER pursuant to the terms, covenants and conditions set forth herein.

## AGREEMENT:

**In consideration of the terms, covenants and conditions set forth herein, the parties agree as follows:**

### 1. WORK TO BE PERFORMED:

 *a.* Contractor shall furnish all regular cleaning and maintenance services on a schedule agreed upon.. Contractor shall provide its' own staffing, cleaning supplies, and equipment to commence, diligently pursue, and complete the WORK, (cleaning), at the premises as outlined in Exhibit A.

Performance of services will be in the following areas:

o **Main Lobby:**
  - Exterior/ Interior Main Entrance
  - Main Lobby
  - Interior windows throughout
  - All restrooms throughout
  - All guest elevators
  - Hallways in Main Lobby
  - Restaurant Area

o **Heart of the House Areas:**

  - Linoleum floor throughout
  - Service elevator
  - Loading dock
  - Employee Cafeteria
  - Employee locker rooms / rest rooms
  - Administrative office, if accessible

Initials: _____



PLAINTIFF'S
EXHIBIT
4 for JV
AGS 6/2/10

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

6.24.10 NIAGARA PRODUCTION 000058

- o **Main Kitchen**
  - All floors
  - All walls
  - Counters
  - All areas of kitchen in general

b. OWNER is entering this agreement with the reliance on Contractors' ability to perform the WORK called herein in a professional and workmanlike manner. Contractor agrees to use its; best efforts in providing WORK, and shall provide such WORK in a timely manner in accordance with the generally accepted standards for the profession and all applicable federal, state, and local law regulations affecting Contractor and the WORK; and shall perform the WORK in accordance with all of the terms, covenants, and conditions of this agreement.

c. Time is of essence in the performance of this Agreement.

## 2. TERMS:

This Agreement shall commence on the _____ day of _____, 200_, and shall be renegotiated in January 2005 for termination within one year from that date, unless sooner terminated in accordance with terms, as provided herein. This Agreement shall then automatically renew for an additional twelve (12) month period, unless terminated by a thirty, (30) day written notice, without cause, by either party.

## 3. MATERIAL PURCHASES:

All cleaning materials to be included into WORK shall be purchased by Contractor. OWNER to provide all **paper products, liners and liquid soap:** for re-stocking of areas and chemicals for special additional services. Contractor can act as an agent to purchases for OWNER any or all paper supplies, trash liners, and liquid soap.

## 4. COMPENSATION:

Initial base fee throughout this agreement is inclusive of:

- All Labor
- All equipment needed to perform WORK
- Cleaning chemicals and cleaning supplies needed to complete WORK
- Full time bi-lingual office staff available for any inconveniences
- Bi-lingual Supervision

a. Initial restoration of all marble floors, kitchen area, and VCT will be gradually restored

b. Contractor agrees that the price to OWNER, for the cost of WORK, re: monthly Janitorial / Maintenance Agreement, shall be as follows:

*Initial:* _____

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

c. The **OWNER** shall pay the contract price to Contractor as follows:
   i. Contract price during the next 12 months.
   ii. Prices will be adjusted in January 2005 for commencement of annual contract.

d. Contractor shall submit an invoice on the 1st of each month payable net thirty days.

e. The parties agree that the above compensation be paid by check, payable to Contractor, Niagara Cleaning Services Inc. within 30 business days upon submittal of invoice.

f. The compensation as described above is inclusive of all charges for cleaning services, expenses of all payroll taxes, payroll costs, and profits to Contractor. This fee is inclusive of all chemicals and any floor restoration when and where needed due to normal deterioration of floor. General Restoration will be covered throughout the duration of contract.

g. OWNER shall pay a finance fee of 2% per month for balance outstanding beyond contractual terms of agreement.

## 5. SERVICE SCHEDULE:

**Niagara Cleaning Services will provide services as follows:**

- Regular Janitorial Agreement / Night Cleaners:
   o Seven days a week , all year round
   o Entry time approximately 11 pm, unless agreed otherwise by both parties

## 6. CHANGE IN THE WORK PERFORMED:

The scope pf the work to be performed under this Agreement is specified in Exhibit A attached hereto. If there is any change to that scope, the Owner shall issue a Change Order and the parties hereto shall agree upon a reasonable price adjustment.

## 7. INSURANCE:

**At all times during the Terms of this Agreement, Contractor shall carry and maintain in full force and effect, at its sole expense, the insurance policies required. Contractor must maintain evidence of continuous insurance coverage throughout this Agreement.**

a. Comprehensive General Liability insurance for $1,000,000.00, per occurrence, including coverage for the following:

   i. Contractual Liability
   ii. Commercial Auto
   iii. Personal Injury
   iv. Property Damage
   v. Independent contracts
   vi. Premises operations

*Initials:* _____

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

8. **Indemnification Provision:**

Contractor agrees to comply with all Legal Requirements of each and every Legal Authority. In addition, Contractor shall: (a) not use within the Hotel any hazardous or dangerous materials; (b) defend, indemnify, and hold harmless Owner and Owner's employees and other agents from and against any claims, demands, penalties, fines, liabilities, settlements, damages, costs or expenses of any kind or nature, known or unknown, contingent or otherwise (including, without limitation, accountant's and attorneys' fees (including fees for the services of paralegals and similar persons), Consultant fees, court costs, and litigation expenses at the trial; and all appellate levels), arising out of, or in any way related to (i) Contractor's negligence, or breach of this Agreement, or failure to perform the services contracted hereunder, or violation of any Legal Requirement of any Legal Authority; or (ii) any personal injury, including wrongful death, or damage to property, real or personal, arising out of or related to the Contractor's negligence, or breach of this Agreement, or failure to perform the services contracted hereunder, or violation of any Legal Requirement of any Legal Authority or other parties, or order by any Legal Authority . Contractor's obligations and liabilities under this agreement shall survive the expiration of the Agreement. As used herein, the following terms shall have the following meaning: (i) "Contractor" shall include Contractor's officers, directors, shareholders, employees, agents, and subcontractors; (ii) "Legal Authority" shall mean any domestic or foreign federal, state, county, municipal, or other government or governmental or quasi-governmental department, commission, board, bureau, court agency, or instrumentally having jurisdiction or authority over Owner, Contractor and/or all or any part of the Hotel, including without limitation , a quasi-official entity or body, such as board of fire examiners or public utilities; and (iii) "Legal Requirements" shall mean any law, constitution, statute, code, rule, regulation, ordinance, restriction, order, ruling, binding opinion, judgment, decree, writ, injunction, franchise, permit, certificate, license (including any beer, wine, or liquor license), authorization , registration , or other direction or requirement of any legal Authority, including, without limitation , the Americans with Disabilities Act, ("ADA"), which is now or in the future applicable to the Hotel, including those not within the present contemplation of the parties; and the provisions of any applicable insurance policies in effect with respect to the Hotel or the land; all restrictions, conditions, covenants, reservations, easements and other matters affecting or running with the land where the Hotel is located which are now or in the future applicable to the land where the Hotel is located which are now or in the future applicable to the Hotel or the land, including covenants and restrictions running with the land.

9. **COMPLIANCE WITH LAW /SAFETY PROGRAM:**

- Contractor warrants that it will comply with all applicable laws and ordinances, rules and regulations having jurisdiction over Premises, Contractor, and WORK.
- Contractor agrees it is responsible for its own Safety and Health Act Regulations

10. **TERMINATION:**

a. If OWNER is dissatisfied with the quality of services, OWNER may inform Contractor in writing of the specific areas of dissatisfaction. If Contractor fails to correct the deficiencies within 15 days, OWNER may terminate this Agreement with 15 days notice to Contractor.

b. Contractor may terminate services at any time without notice for non-payment.

c. Either party may terminate this Agreement with or without cause by giving the other party at least 30 days prior written notice. Upon such termination, Contractor shall be entitled to compensation for WORK performed up to date of termination.

d. Force Majeure: Neither party shall be liable in damages or have the right to terminate this Agreement for any delay or default in performing hereunder if such delay or default is caused by conditions beyond its

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

e. control including, but not limited to Acts of God, Government restrictions (including the denial or cancellation of any export or other necessary license), wars, insurrections and/or any other cause beyond the reasonable control of the party whose performance is affected.

f. OWNER will not hire or otherwise engage any current or previous employee of the Contractor during the term of this Agreement for a period of (8) months after the termination of Agreement.

## 11. **RULES AND REGULATONS:**

All rules and regulations in effect within and on the Premises access thereto regarding passes, badges, list of employees, safety and conduct, shall be strictly enforced and observed by Contractor and its employees.

## 12. **NOTICES:**

**Any notice, demand, or communication, which either party may desire or be required to give to the other shall be in writing and will be deemed sufficiently given or rendered if delivered personally or sent via mail, postage prepaid, addressed as follows:**

**If to OWNER:**          Intercontinental West Miami
                          2505 Northwest 87th Avenue
                          Doral, Fl 33172

**If to Contractor:**     Niagara Cleaning Services Inc.
                          8181 NW 36th Street Suite 8-E
                          Miami, FL 33166

Either party shall have the right to designate in writing, served as provided above, a different address to which any notice, demand, or, communication is to be delivered.

## 13. **MISCELLANEOUS:**

a. If any clause or provision of this Agreement is to be held invalid in part or whole, then remaining clauses and provisions, or portions thereof, shall nevertheless be and remain in full force and effect.

b. No amendment, alteration, modification, or addition to this Agreement shall be valid or binding unless expressed in writing and signed by the parties to be bound thereby.

c. The captions of each section are added as a matter of convenience only and shall be considered of no effect in the construction of any provision of this Agreement.

d. If any party hereto shall bring any suit or action against another for relief, declaratory or otherwise, arising out of this Agreement, the prevailing party shall have and recover against the other party, in addition to all court fees and disbursements, such sums as the court may adjudge to be reasonable attorneys' fees.

e. Any and all warranties, provisions, rights and obligations of the parties herein described and agreed to be performed subsequently to the termination of this Agreement shall survive the termination of this Agreement.

f. Time is of essence with respect to the performance of each of the covenants and agreements herein set forth.

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

If not accepted in writing by buyer, this Proposal/ Contract shall automatically expire 30 days from the date submitted, unless extended in writing by Niagara Cleaning Services Inc.

Niagara Cleaning Services Inc. hereby proposes to furnish the scope of work specified in Exhibit A, as described, for a monthly contract fee of:
days. All applicable taxes will be specified on invoice.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the respective dates set forth below, to become effective as of the day and year set forth at beginning of document and subsequently below.

## Intercontinental West Miami

**Signed by:** _____

**Title:** _____

**Date:** _____

**Date of Commencement: This, _____ day of, _____, 2004.**

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

 **NIAGARA** Cleaning Services, Inc.



December 10, 2004

Intercontinental West Miami
2505 NW 87th Avenue
Miami, FL 33172

Attn: Ryan Hendriks
Housekeeping Manager

Mr. Hendriks:
Following is a list of hourly rates for temporary personnel as requested. Please contact me if you have any questions.

- **Carpet Cleaner / Houseman:**
  Labor will be provided by Niagara Cleaning Services including equipment and chemicals for carpet care. This employee will have a minimum of 30 hours and a maximum of 40 hours per week. If it is necessary to increase work hours, we will provide two employees. (Hourly rate will not differ if employee is used for various duties due to the fact that this employee will have experience and knowledge in carpet care).

  - Hourly rate for Carpet Cleaner / Houseman: $

- **Housekeepers and Stewards**

  - Hourly rate for Housekeepers:   / per man hour
  - Hourly rate for Stewards:   per man hour
  - Hourly rate for Houseman:   / per man hour

- **Carpet Cleaning with Extraction:**

  - Per square foot rate of   5 (includes labor, equipment and chemicals)



12-6.10 NIAGARA PRODUCTION 000064

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



# JANITORIAL / MAINTENANCE SERVICE AGREEMENT

This **JANITORIAL / MAINTENANCE SERVICE AGREEMENT**, (the 'agreement"), made effective this _____
day of the month _____, 200_, is by and between, A Florida state corporation, **NIAGARA CLEANING SERVICES INC.**, (Contractor), and **INTERCONTINENTAL WEST MIAMI.**

## RECITALS:

    A. OWNER is the operator of Intercontinental West Miami., located in Miami, Florida, (the "premises")

    B. CONTRACTOR is in the business of providing cleaning / maintenance services and related services in accordance with the Scope of Work, (the "Work"), hereto attached as **Exhibit A.**

    C. OWNER desires and agrees to engage Contractor to provide the WORK and CONTRACTOR desires to perform the WORK for OWNER pursuant to the terms, covenants and conditions set forth herein.

## AGREEMENT:

**In consideration of the terms, covenants and conditions set forth herein, the parties agree as follows:**

### I. WORK TO BE PERFORMED:

    *a.* Contractor shall furnish all regular cleaning and maintenance services on a schedule agreed upon.. Contractor shall provide its' own staffing, cleaning supplies, and equipment to commence, diligently pursue, and complete the WORK, (cleaning), at the premises as outlined in Exhibit A.

Performance of services will be in the following areas:

- **Main Lobby:**
  - Exterior/ Interior Main Entrance
  - Main Lobby
  - Interior windows throughout
  - All restrooms throughout
  - All guest elevators
  - Hallways in Main Lobby
  - Restaurant Area

- **Heart of the House Areas:**
  - Linoleum floor throughout
  - Service elevator
  - Loading dock
  - Employee Cafeteria
  - Employee locker rooms / rest rooms
  - Administrative office, if accessible

PLAINTIFF'S
EXHIBIT
6 for IV
NCS 6/25/10

Initials: _____

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



- o **Main Kitchen**
  - All floors
  - All walls
  - Counters
  - All areas of kitchen in general

b. OWNER is entering this agreement with the reliance on Contractors' ability to perform the WORK called herein in a professional and workmanlike manner. Contractor agrees to use its; best efforts in providing WORK, and shall provide such WORK in a timely manner in accordance with the generally accepted standards for the profession and all applicable federal, state, and local law regulations affecting Contractor and the WORK; and shall perform the WORK in accordance with all of the terms, covenants, and conditions of this agreement.

c. Time is of essence in the performance of this Agreement.

## 2. TERMS:

This Agreement shall commence on the _____ day of _____, 200_, and shall be renegotiated in January 2005 for termination within one year from that date, unless sooner terminated in accordance with terms, as provided herein. This Agreement shall then automatically renew for an additional twelve (12) month period, unless terminated by a thirty, (30) day written notice, without cause, by either party.

## 3. MATERIAL PURCHASES:

All cleaning materials to be included into WORK shall be purchased by Contractor. OWNER to provide all **paper products, liners and liquid soap**: for re-stocking of areas and chemicals for special additional services. Contractor can act as an agent to purchases for OWNER any or all paper supplies, trash liners, and liquid soap.

## 4. COMPENSATION:

Initial base fee throughout this agreement is inclusive of:

- All Labor
- All equipment needed to perform WORK
- Cleaning chemicals and cleaning supplies needed to complete WORK
- Full time bi-lingual office staff available for any inconveniences
- Bi-lingual Supervision

a. Initial restoration of all marble floors, kitchen area, and VCT will be gradually restored

b. Contractor agrees that the price to OWNER, for the cost of WORK, re: monthly Janitorial / Maintenance Agreement, shall be as follows:

**$5,275.00, (Five thousand two hundred seventy-five dollars), Payable upon invoice net thirty days.**

*Initial: _____*

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



**NIAGARA**
Cleaning Services, Inc.

   c.   The **OWNER** shall pay the contract price to Contractor as follows:
       i.   Contract price during the next 12 months.
      ii.   Prices will be adjusted in January 2005 for commencement of annual contract.

   d.   Contractor shall submit an invoice on the 1st of each month payable net thirty days.

   e.   The parties agree that the above compensation be paid by check, payable to Contractor, Niagara Cleaning Services Inc. within 30 business days upon submittal of invoice.

   f.   The compensation as described above is inclusive of all charges for cleaning services, expenses of all payroll taxes, payroll costs, and profits to Contractor. This fee is inclusive of all chemicals and any floor restoration when and where needed due to normal deterioration of floor. General Restoration will be covered throughout the duration of contract.

   g.   OWNER shall pay a finance fee of 2% per month for balance outstanding beyond contractual terms of agreement.

## 5. SERVICE SCHEDULE:

**Niagara Cleaning Services will provide services as follows:**

- Regular Janitorial Agreement / Night Cleaners:
  - Seven days a week , all year round
  - Entry time approximately 11 pm, unless agreed otherwise by both parties

## 6. CHANGE IN THE WORK PERFORMED:

The scope pf the work to be performed under this Agreement is specified in Exhibit A attached hereto. If there is any change to that scope, the Owner shall issue a Change Order and the parties hereto shall agree upon a reasonable price adjustment.

## 7. INSURANCE:

**At all times during the Terms of this Agreement, Contractor shall carry and maintain in full force and effect, at its sole expense, the insurance policies required. Contractor must maintain evidence of continuous insurance coverage throughout this Agreement.** and list owner as add-tional Insured.

   a.   Comprehensive General Liability insurance for $1,000,000.00, per occurrence, including coverage for the following:

       i.   Contractual Liability
      ii.   Commercial Auto
     iii.   Personal Injury
     iv.   Property Damage
      v.   Independent contracts
     vi.   Premises operations

Initials: _____

b. Workers Compensation Insurance.
Statutory w.comp. Employers liability..... Same as leasing contract.

8181NW 36° St. Suite 8-E  Miami, Fl 33166    Ph.: 305.437.9812  Fax. 305.436.8008
e-mail: ncsdoral@bellsouth.net

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



*Indemnification*

## 8. LIMITED LIABILITY

The Contractor's liability shall-exclude any special, indirect or consequential damages relating to or arising out of, this Agreement including, but not limited to the performance or non performance of subcontractors used by Contractor.

## 9. COMPLIANCE WITH LAW /SAFETY PROGRAM:

- Contractor warrants that it will comply with all applicable laws and ordinances, rules and regulations having jurisdiction over Premises, Contractor, and WORK.
- Contractor agrees it is responsible for its own Safety and Health Act Regulations

## 10. TERMINATION:

a. If OWNER is dissatisfied with the quality of services, OWNER may inform Contractor in writing of the specific areas of dissatisfaction. If Contractor fails to correct the deficiencies within 15 days, OWNER may terminate this Agreement with 15 days notice to Contractor.

b. Contractor may terminate services at any time without notice for non-payment.

c. Either party may terminate this Agreement with or without cause by giving the other party at least 30 days prior written notice. Upon such termination, Contractor shall be entitled to compensation for WORK performed up to date of termination.

d. Force Majeure: Neither party shall be liable in damages or have the right to terminate this Agreement for any delay or default in performing hereunder if such delay or default is caused by conditions beyond its control including, but not limited to Acts of God, Government restrictions (including the denial or cancellation of any export or other necessary license), wars, insurrections and/or any other cause beyond the reasonable control of the party whose performance is affected.

e. OWNER will not hire or otherwise engage any current or previous employee of the Contractor during the term of this Agreement for a period of (8) months after the termination of Agreement.

## 11. RULES AND REGULATONS:

All rules and regulations in effect within and on the Premises access thereto regarding passes, badges, list of employees, safety and conduct, shall be strictly enforced and observed by Contractor and its employees.

*Initials: _____*

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



## 12. NOTICES:

Any notice, demand, or communication, which either party may desire or be required to give to the other shall be in writing and will be deemed sufficiently given or rendered if delivered personally or sent via mail, postage prepaid, addressed as follows:

| | |
|---|---|
| **If to OWNER:** | Intercontinental West Miami<br>2505 Northwest 87th Avenue<br>Doral, Fl 33172 |
| **If to Contractor:** | Niagara Cleaning Services Inc.<br>8181 NW 36th Street Suite 8-E<br>Miami, FL 33166 |

Either party shall have the right to designate in writing, served as provided above, a different address to which any notice, demand, or, communication is to be delivered.

## 13. MISCELLANEOUS:

a.  If any clause or provision of this Agreement is to be held invalid in part or whole, then remaining clauses and provisions, or portions thereof, shall nevertheless be and remain in full force and effect.

b.  No amendment, alteration, modification, or addition to this Agreement shall be valid or binding unless expressed in writing and signed by the parties to be bound thereby.

c.  The captions of each section are added as a matter of convenience only and shall be considered of no effect in the construction of any provision of this Agreement.

d.  If any party hereto shall bring any suit or action against another for relief, declaratory or otherwise, arising out of this Agreement, the prevailing party shall have and recover against the other party, in addition to all court fees and disbursements, such sums as the court may adjudge to be reasonable attorneys' fees.

e.  Any and all warranties, provisions, rights and obligations of the parties herein described and agreed to be performed subsequently to the termination of this Agreement shall survive the termination of this Agreement.

f.  Time is of essence with respect to the performance of each of the covenants and agreements herein set forth.

## 14. DISPUTE RESOLUTION: DCLETED

All claims or disputes between the contractor and Owner arising out of or relating to this Agreement, or the breach thereof, shall be decided by arbitration in accordance with the Rules of the American Association currently in effect unless the parties mutually agree otherwise. Arbitration shall take place in Dade County, FL applying the substantive laws of the State of Florida.

If not accepted in writing by buyer, this Proposal/ Contract shall automatically expire 30 days from the date submitted, unless extended in writing by Niagara Cleaning Services Inc.

*Initials:* _____

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



**NIAGARA**
Cleaning   Services, Inc.

Niagara Cleaning Services Inc. hereby proposes to furnish the scope of work specified in Exhibit A, as described, for a monthly contract fee of: $5, 275.00, (Five thousand two hundred seventy-five dollars), payable upon invoice net thirty days.  All applicable taxes will be specified on invoice.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the respective dates set forth below, to become effective as of the day and year set forth at beginning of document and subsequently below.

## Intercontinental West Miami

**Signed by:** _____

**Title:** _____

**Date:** _____

**Date of Commencement: This, _____day of, _____, 2004.**

*Initials:* _____

8181NW 36° St. Suite 8-E  Miami, Fl 33166    Ph.: 305.437.9812  Fax. 305.436.8008
e-mail: ncsdoral@bellsouth.net

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



**NIAGARA**
Cleaning   Services, Inc.

# EXHIBIT A

## INTERCONTINENTAL WEST MIAMI

### Main Lobby

**I.     Marble Care Program**

Marble being such a delicate stone, is easily damaged if procedures for the maintenance of marble are not applied by a trained professional.

    a.   Sweeping of all areas
    b.   Wet mopping of all areas
    c.   Application of spray buff to areas
    d.   Polishing of all marble floor using steel-wool of various levels
    e.   Restoration of marble floor when necessary using diamond grinding and restoration process.

**II.    Main Lobby / Guest Restrooms**
    General Cleaning of Above Areas

    **Main Lobby / Main Entrance**
    a.   Cleaning of interior windows located throughout main lobby and main entrance
    b.   Disposing  and replacing trash from bins
    c.   Dusting of all light fixtures on walls
    d.   Dusting of all areas high and low
    e.   Cleaning of concierge counters
    f.   Cleaning of all wooden panels on walls
    g.   Vacuuming of all area rugs and furniture
    h.   Polishing of all handrails and / or door knobs
    i.   Polishing all ash tray urns
    j.   Removal of all cobwebs from corners high and low

    **Guest Restrooms ( Two in main lobby: Two by Fitness Center)**
    a.   Remove, dispose, and change trash can liners in restrooms
    b.   Sanitizing and disinfecting of all W/C and sinks
    c.   Sanitizing and disinfecting of all stall partitions, trash cans, and doors
    d.   Cleaning of all mirrors
    e.   Polishing of all bright-work, (also chrome under sink)
    f.   Sweeping of entire bathroom, mopping of all floors, (to prepare for polishing)
    g.   Deodorizing of restrooms

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



**III. The Restaurant**
   a. Complete carpet maintenance to entire restaurant and bar
      i. Vacuuming
      ii. Spot cleaning on a daily basis
   b. Dusting of all areas in restaurant
   c. Cleaning of all counters
   d. Dusting and cleaning of all interior columns
   e. Dusting and polishing of all wooden panels on walls and columns
   f. Wiping of chairs to remove fallen food
   g. Cleaning of buffet bar stainless steel and plexiglass
   h. Wuiping down of exterior buffet stand


**IV. Guest Elevators**
   a. Dusting and cleaning of all interior elevator walls
   b. Cleaning and polishing of all stainless steel interior and exterior
   c. Cleaning of all interior mirrors
   d. **Complete Marble Care** on all elevator floors
      i. Sweeping of elevator floor
      ii. Mopping of elevator floor
      iii. Application of spray buff to floor
      iv. Polishing of elevator floor

## Heart of The House Areas: (HOH)

**I. Main Kitchen**
   a. Cleaning of all hard surfaces in Kitchen
      i. Dusting of all high and low areas
      ii. Application of degreaser to all counters, exterior refrigerators, and all stainless steel surfaces
   b. Wiping clean of all areas treated with chemicals to remove grease
   c. Application of appropriate chemicals for proper cleaning of all surfaces to remove any residual grease
   d. Cleaning of all stainless steel surfaces
   e. Sanitizing and disinfecting of all areas in kitchen (OSHA compliant chemicals and procedures)
   f. **Complete Floor Care Program**
      i. Sweeping of entire kitchen floor
      ii. Application of degreaser to kitchen floor
      iii. Mopping of kitchen floor
      iv. Deep scrubbing of kitchen floor using automatic scrubbing machine
      v. Water extraction of residual water
      vi. Mopping dry of entire kitchen floor
   g. Pressure cleaning of areas if needed

*Initials:* _____

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



**II.**   **HOH Employee Hallways**

    a.   Dusting of all walls and handrails
    b.   Cleaning of all doors and door knobs
    c.   Cleaning of all light switches and fixtures
    d.   Removal of all cobwebs from high and low areas
    e.   **Complete Linoleum Floor Care**
        i.      Sweeping of entire hallways
        ii.     Mopping of entire hallways
        iii.    Auto-scrubbing of linoleum floor on a daily basis to maintain clean
        iv.     Application of wax to linoleum floor (as needed)
        v.      Application of spray buff specially for linoleum floors (daily)
        vi.     Buffing of linoleum floors (daily)
        vii.    Special project – cleaning of baseboards

**III.**   **Employees Cafeteria**

    a.   Dusting of all areas high and low
    b.   Cleaning of walls
    c.   Cleaning of TV and/or vending machines
    d.   Sanitizing and disinfecting of all hard surfaced areas
        a.   Tables, chairs, counters etc…
    e.   Complete Floor Care Program
        i.      Sweeping of entire cafeteria floor
        ii.     Application of degreaser to floor
        iii.    Mopping of entire cafeteria floor
        iv.     Scrubbing of floor with automatic scrubbing machine
        v.      Extraction of excess water from floor
        vi.     Mopping floor dry

**IV.**   **Employees Locker Room**

    a.   Dusting of all areas high and low
    b.   Cleaning of all exterior lockers, high and low
    c.   Cleaning of all benches
    d.   Sanitizing and disinfecting of all restrooms in locker rooms, (using same procedures as in other restrooms)
    e.   Cleaning and sanitizing of all shower stalls
    f.   Sweeping, mopping of locker room floors
    g.   Scrubbing of floor on an as needed basis

**V.**   **Service Elevators (Three times a week)**
    a.   Dusting and cleaning of all interior elevator walls
    b.   Cleaning and polishing of all stainless steel, interior and exterior
    c.   Cleaning of all interior mirrors
    d.   Complete Floor Care Program (Elevator marble floor)

*Initials: ____*

Same Elevator laudry VCT Floor Care , 2,3,4,5,6.

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



**NIAGARA**
Cleaning Services, Inc.

VI.     **Loading Dock**

    a.  Pressure cleaning of loading dock and dumpster areas (Bi-weekly)
        i.  Application of degreasers / pressure cleaning of area
        ii.  Scrubbing of entire area using automatic scrubbing machine

Niagara Cleaning Services Inc. will provide all labor, equipment, and chemicals to furnish all of the work specified in outline. Hotel will need to provide only paper supplies and hand soap for the stocking of restrooms if NCS is to restock.

Our designated cleaning crew, will have a supervisor on the site at all times, and will be in contact with the office via radio if necessary, to report any emergencies or unforeseen circumstances. The work site will be visited at least two times a week, by the supervisors' superior to ensure that the property is being kept in optimum conditions, in accordance to specifications of work. A weekly written report will be kept for our records of all work performed during that week. Arrangements will be made to deliver these reports to the Hotel Administrator if requested.

Niagara Cleaning Services Inc. hereby proposes to furnish all of the above-mentioned scope of work as described, on a daily basis, unless otherwise stated in specifications. We are open to any suggestions you may have in reference to the work and/or fees specified.

If not accepted in writing by buyer, this Proposal / Contract shall automatically expire 30 days from the date of delivery, unless extended in writing by Niagara Cleaning Services Inc.

<u>**Proposal submitted by Niagara Cleaning Services Inc.**</u>

**Authorized Representative:** _____  **Date:** _____
                                  **(General Manager)**

**Contractual Acceptance by:** _____  **Date:** _____
                                  **(Name & Title)**

**Signature:** _____

*Niagara Cleaning Services looks forward to providing your property with professional and reliable services.*

*Initials _____*

---

8181NW 36° St. Suite 8-E  Miami, Fl 33166    Ph.: 305.437.9812  Fax. 305.436.8008
e-mail: ncsdoral@bellsouth.net

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



**INTERCONTINENTAL**
WEST MIAMI

| Task Sheet | 04-26-06/CLEAN/20 |
|---|---|
| Attendant Id and Name | 20 / Attendant 20 |
| Attendant Instructions Task Details | *82 VC and *85 OC |
| Task Sheet No. | 20 | Completed Da |
| Auto Generated | Y |

Instructions

Room Details

| Room No | Room Type | Room Status | FO Status | Reservation Status | Name | Arrival | Departure |
|---|---|---|---|---|---|---|---|

@ Sleep    # Skip    +Arrival

*(handwritten notes)*

1. Lobby not swept/mopped/dusted
2. Restaurant not vacuumed/dusted
3. Cleaned
4. Locker rooms not cleaned
5. BOH not cleaned
6. Public floor not swept/mopped
7. Cleaned
8. VCT not swept/mopped
   Cafeteria not cleaned
   Service elevator not cleaned/dusted

Filter: Task Date From 04-26-06 to 04-26-06
Task Code: CLEAN
Attendant:
Show Due Outs Only: N
Show Guest Name: Y

Page 39 of 40

hsk_tasksheet_3

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



# ADDENDUM

Re:   Niagara Cleaning Services Inc
      Proposed 2005 Janitorial / Maintenance Agreement

October 18, 2004

Addendum to original Proposal / Contract and Janitorial/ Maintenance Agreement submitted on 10/15/04.

Niagara Cleaning Services hereby proposes to furnish all work as specified in Exhibit A, including restoration of all areas specified in Exhibit A to bring property to Niagara Cleaning Services standards, and then to continue to maintain these areas throughout the contract year for a monthly contract price effective January 2005, of:  **$5,775.00, (five thousand seven hundred seventy-five dollars), all applicable taxes will be specified on invoice.**

The following areas are to be included into contract price for year 2005;
- Marble elevator landing on 5th Floor;
  - Restoration of and general maintenance as needed;
- VCT floor located in service areas on guest room floors (4 floors)
  - Initial restoration of VCT, maintenance as needed;

This fee is inclusive of all labor, equipment, chemicals and supplies needed to restore and then maintain specified areas throughout contract year.

Contract will automatically re-new for another year unless specified in writing by either party with a 30 day notice.

We are open to any suggestions you may have to better serve you.

---

8181NW 36° St. Suite 8-E  Miami, Fl 33166    Ph.: 305.437.9812  Fax. 305.436.8008
e-mail: ncsdoral@bellsouth.net

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

# Addendum - I

**Addendum to original monthly contract submitted by Niagara Cleaning Services Inc to Intercontinental West Miami**

**Description of Areas:**

**Additional Kitchen Areas:**

- Additional interior kitchen areas / daily basis
- VCT hallways located in front and behind ballrooms, (2,300 sq.ft)
  - Twice a week, Fridays and Mondays

**The above scope of work will have a monthly contract fee of; $400.00, (four hundred dollars)**

- VCT hallways – serviced on a daily basis, will have an additional monthly fee of $200.00, (two hundred dollars) This fee will be waived.

**Additional Hotel Areas:**

- Marble Restoration & Maintenance:
  - Floors 2nd to 6th
- Main entrance lateral marble floor / exterior
  - Hallway entrances
- Two Restrooms located in lower level, (M & L)
- Marble landings located on 2nd to 6th floors
- Marble hallway located lateral to ballrooms
- Carpeted hallway
  - Daily vacuuming of carpet

Marble restoration and maintenance is inclusive of restoring on an as needed basis. Niagara cleaning commits to maintaining marble floor in optimum conditions at all times.

**The above scope of work will have a monthly contract fee of: $600.00, (six hundred dollars a month).**

Please contact the office if proposal accepted; services will begin immediately. We look forward to growing with you!

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



COPY (1-2) 6/25/2010

## CONTRACT FOR PERSONNEL SERVICES

THIS NON-EXCLUSIVE CONTRACT for personnel services is made by and between Niagara Cleaning Services, Inc., having a place of business at 4869 NW 36 St Miami Springs, FL 33166 (hereafter "NIAGARA") and MDM Hotel Group Ltd., d/b/a Dadeland Marriott having a principal place of business at 9090 South Dadeland Boulevard, Miami, Florida 33156 (hereafter "MARRIOTT"), commencing on January 1, 2006, and continuing until January 1, 2007, unless earlier terminated under the terms of this agreement (hereinafter "Contract" or "Agreement").

### 1.   RETENTION OF SERVICES

MARRIOTT retains NIAGARA for the purpose of providing staffing coverage as required by MARRIOTT at its premises located at 9090 South Dadeland Boulevard, Miami, Florida (hereinafter, the "Premises") in various departments (hereinafter referred to as the "Services"), and NIAGARA agrees to render these Services upon the terms and conditions set out in this Agreement.

### 2.   TERM

The term of this Agreement shall be one year, effective on January 1, 2006. Thereafter this Agreement will be renewed automatically for successive periods unless written notice of cancellation is given by either party not earlier than thirty (30) days prior to the termination of each period.

Notwithstanding the provisions of paragraph 2 herein, either party may terminate this Agreement by giving written notice to the other specifying the date of termination, such notice to be given not less than thirty (30) days prior to the effective date of such termination.

### 3.   COMPENSATION

MARRIOTT will pay NIAGARA at the rates and through the procedure described in Exhibit A, attached hereto and made a part hereof. The rates set out in Exhibit A do not include any charges, fees or taxes imposed or levied by other authorities. Such charges, fees or taxes shall be borne by NIAGARA. NIAGARA shall

1

PLAINTIFF'S EXHIBIT 7 for #4 AGS 6/25/10

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

6.24.10 NIAGARA PRODUCTION 000098

or indirectly caused by performance or nonperformance of obligations imposed by the Agreement.

NIAGARA shall indemnify, defend and hold harmless MARRIOTT, its agents, employees, directors, officers, shareholders, and other related parties, including their successors and assigns from and against any and all such losses, claims, damages, liabilities and expenses, including reasonable attorney fees and costs, arising directly or indirectly with the performance of this Agreement.

## 6. INSURANCE

NIAGARA warrants that it shall maintain throughout the term of this Agreement in a form and in a company satisfactory to MARRIOTT, the following policies of insurance:

Comprehensive general liability insurance, providing coverage for liability with respect to NIAGARA's operations pursuant to this Agreement, with a combined single limit of liability of not less than $1,000,000 Million Dollars per occurrence; and shall name Marriott as an additional insured under said policies at its sole cost and expense; and

Workers' Compensation fully insuring under the laws of the State of Florida, and Employer's Liability Insurance providing a limit of liability of at least USD 500,000; and

Such other insurance as MARRIOTT may request from time to time, with at least 60 days prior notice to NIAGARA.

## 7. GOVERNING LAW

This Agreement is subject to and shall be interpreted in accordance with the laws of the State of Florida. The parties agree that any legal action related to this Agreement must be brought in the appropriate court of Miami-Dade County, Florida. The parties further agree to waive any right to a trial by jury.

## 8. ASSIGNMENT

This Agreement may not be assigned by either party without the prior written consent of the other party.

3

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

MDM HOTEL GROUP, LTD., dba MIAMI      NIAGARA CLEANING SERVICES,
DADELAND MARRIOTT

9090 S. Dadeland Blvd #210
Miami, Florida 33156

Authorized Signature                           Authorized Signature

Angelica Restrepo / President

Print Name and Title                        Print Name and Title

1/31/06

Date                                        Date

5

6.24.10 NIAGARA PRODUCTION 000100

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

· · · ·

## EXHBIT "A" SERVICES DESCRIPTION

This Exhibit "A" contains the rates and additional terms and conditions of the services to be provided by Niagara to Marriott.

1.  Rates:

    A.

2.  <u>Identification of Niagara Employees</u>. Niagara shall at all times maintain Marriott informed of the identification and additional relevant information, as determined by Marriott from time to time, of each Niagara employee to perform services under this Agreement at the Premises. The initial list of Niagara employees to perform services at the Premises is attached hereto as Exhibit "B".

3.  <u>Loss Prevention</u>. Niagara shall be familiar with Marriott's policies and procedures, as supplied by Marriott, and will ensure that all of Niagara's employees are familiar with these policies and procedures. Further, Niagara will conduct background checks of all Niagara employees to be performing services under this Agreement and will advise Marriott of any subsequent relevant change in status of its employee which would affect or violate any of Marriott's own policies or any Federal, State or local laws or ordinances.

    All Niagara employees shall go through daily Loss Prevention as they enter and exit the Premises.

4.  <u>Use of Chronus or Other Automated Time Management System</u>. Niagara and Marriott shall have equal access to the Chronus or other automated time management system (ATMS) to be installed and operating at the Premises for use by Niagara employees at the Premises. All of Niagara's employees subject of this Agreement shall punch in Niagara's ATMS at the Premises. Niagara shall provide and maintain the ATMS at its own cost and expense.

5.  Niagara should hold weekly meetings with Marriott managers to forecast the staffing requirements for the following week. A purchase order should be provided to Niagara in writing 1 week in advance to the expected service.

6

6.24.10 NIAGARA PRODUCTION 000101

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

**Niagara Cleaning Services, Inc.**
**List of employees: 1/1/06**

| First Name | Department | Location |
|------------|------------|----------|
|            | Kitchen | MARR |
|            | Housekeeping | MARR |
|            | Housekeeping | MARR |

7.

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

 

# CONTRACTUAL AGREEMENT
# FOR MONTHLY SERVICES

This Agreement (the "Agreement") is made and entered into this ___, day of _____ , ____, by and between The Ritz-Carlton Hotel Company, LLC, ("Ritz-Carlton") having a principal place of business at 4445 Willard Avenue, Suite 800, Chevy Chase, Maryland and **Niagara Cleaning Services Inc**, ("Company") having a principal place of business at **5220 NW 72nd Avenue, #2, Miami, FL, 33166.**

1. **Purpose**

    This Agreement is entered into specifically for the purpose of Company assigning its employees to perform services for and at Ritz-Carlton, as described in Attachment A, appended hereto.

2. **Scope of Work**

    Company's employees will provide labor services for The Ritz-Carlton, Coconut Grove Hotel, (the "Hotel") as described in Attachment A, appended hereto. This could include, but is not limited to temporary and full-time services.

3. **Term**

    This Agreement shall become effective on the date entered above and shall continue in full force and effect until terminated as provided herein.

4. **Termination**

    A.  Notwithstanding any other provisions contained in this Agreement, Ritz-Carlton may terminate the Agreement, for any reason and without penalty, upon thirty (30) days written notice to the Company. Company may terminate this Agreement upon thirty (30) days written notice to Ritz-Carlton.

    B.  In the event that this Agreement is terminated, Ritz-Carlton shall only be obligated to pay for services actually provided by Company up to the effective date of the termination.

PLAINTIFF'S
EXHIBIT
8   for   14
AGS  6/25/10

5220 NW 72 Ave. Bay # 2   Miami, Fl 33166   •   Ph.: 305.437.9812   Fax: 305.468.0116
Www.niagaracleaning.com   •   E-mail: ncsdoral@bellsouth.net

CONFIDENTIAL NIAGARA-RCH-PROSUBPOENA 000113

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



**NIAGARA**
Cleaning Services, Inc.

5. **Employees of Company**

A. Company will recruit, interview, select, hire and assign employees who, in Company's judgment, are best qualified to perform the services described in Attachment A. As the employer, Company will: (i) maintain all necessary personnel and payroll records for its employees, (ii) withhold from its employees' compensation any taxes, charges or other payroll deductions required by law; (iii) remit such taxes and charges to the appropriate government entity; (iv) pay net wages and fringe benefits, if any, directly to employees; (v) provide for liability insurance as specified in Section 6-Insurance (below) and (vi) provide worker's compensation insurance coverage in amounts as required by law.

B. In connection with the performance of this Agreement, Company will comply with all laws, regulations and orders to the extent applicable to Company.

C. The employees assigned to Ritz-Carlton under this Agreement shall remain employees of Company. Company's employees shall not be entitled to participate in any Ritz-Carlton or Marriott International, Inc. employee benefit plans, including but not limited to, pension, Section 401(k) profit sharing, retirement, deferred compensation, welfare, insurance, disability, bonus, vacation pay, sick pay, Paid Time Off (PTO), stock purchase, severance pay and other similar plans, programs and agreements, whether reduced to writing or not.

D. All Company's employees will be screened prior to being hired. The screening process shall include, but not be limited to:

1) Completion of Company's application which shall provide for references, employment history and disclosure of criminal convictions;

2) Reference checks, including at least three (3) previous employers if possible

3) Drug testing and criminal background checks, where required for the position. Ritz-Carlton agrees to reimburse Company for all expenses incurred by Company for drug testing of employees under this Agreement.

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



**NIAGARA**
Cleaning Services, Inc.

E.   Company's employees shall sign an acknowledgment outlining Company's role as employer and recognizing that Ritz-Carlton is not their employer, as set out in Attachment B. In addition, Company's employees shall sign the Information Systems Protection Acknowledgement form as set out in Attachment C.

F.   Company will instruct all new employees on the proper use of all equipment, supplies and chemicals used by Ritz-Carlton.

G.   Company's employees who are assigned to work at Ritz-Carlton will be held to the same standards and rules as employees of Ritz-Carlton. Company agrees to remove any of its employees at Ritz-Carlton's request. Company agrees to assist and cooperate with any investigation initiated by Ritz-Carlton involving any employee of Company provided to Ritz-Carlton under this Agreement.

H.   Company agrees to inform its workers of work hours, meal and break procedures and appropriate dress code.

6.   **Insurance**

Prior to commencement of this Agreement, Company shall provide Ritz-Carlton with a certificate of insurance evidencing the existence of valid and enforceable insurance policies as follows:

A.   Commercial General Liability coverage containing bodily injury and property damage limit of not less than $1,000,000 per occurrence. Such insurance shall name Ritz-Carlton and Marriott International, Inc. as an additional insured.

B.   Worker's Compensation insurance in limits not less than prescribed by State Law.

C.   Automobile liability insurance for any Company owned or leased vehicles used in conjunction with the service provided by Company hereunder, for bodily injury or property damage with combined single limit of not less than $1,000,000 each occurrence.

D.   All policies shall be specifically endorsed to provide that the coverage obtained by virtue of the Agreement will be primary and that any insurance carried by Ritz-Carlton shall be in excess and non-contributory. All policies shall be specifically endorsed to provide that such coverage

37/2886 NIAGARA PRODUCTION 000115

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



### Independent Contractor

I am and shall remain an employee of my employer while performing services for Company. I am not and shall not be deemed to be an employee of Company, its parent company, or its subsidiaries or affiliates for any purpose, and acknowledge and agree that I am not eligible for employment benefits of any kind with Company, including workers compensation, pay and other benefits. I do not have and shall not have the right to bind Company by any representation, promise, contract, or other act or omission.

### No Right or License

Nothing in this acknowledgement will be construed to grant any right or license to me or my employer with respect to data or information disclosed by Company, or any patent, trademark, copyright, trade secret, or other intellectual property right owned, held or controlled by Company. As between me, my employer and Company, all rights (including the right to reproduce, distribute, extract, or disclose to other persons or entities), title, and interest in and to any such data, information and intellectual property belong exclusively to and shall remain exclusively with Company.

### Ownership of Work

I agree that all rights, title and interest (including but not limited to copyright and patent rights) in all work, products (including without limitation marks; computer programs and documentation; photographs; logos; designs; drawings; artistic and graphical works; reports; data; information; other works of authorship; and inventions, if any) made by me or my employer, or its suppliers or contractors, during performance of services for Company (all such works hereinafter "Work Products") will be as set forth in the agreement between my employer and Company. I will not assert any rights in the Work Product inconsistent with any such agreement and hereby assign any rights I have in such Work Products as necessary to give effect to such agreement. If no such agreement exists, or if such agreement does not cover intellectual property rights, I hereby assign any such rights to Company. Company may register, record, and otherwise perfect title to and ownership of all Work Products in Company's own name. I agree to execute such documents, and otherwise provide such assistance, as Company may reasonably request, at Company's expense, to accomplish the purposes of this paragraph.

**By signing the first page of this document I certify that I have read and understand all the information contained in this acknowledgement and that I agree to comply with its provisions. I recognize that if I fail to comply with this agreement, Company may terminate its relationship with my employer and me and exercise other legal remedies to protect its rights.**

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



**WITNESS THE EXECUTION HEREOF,** in any number of counterpart copies, each of which counterpart copy shall be deemed an original for all purposes.

**NIAGARA CLEANING SERVICES INC.**

_____
By:  ANGELICA RESTREPO / PRESIDENT

**THE RITZ-CARLTON HOTEL COMPANY, L.L.C.,**
D/B/A THE RITZ-CARLTON, _____

By: _____
Title:  General Manager

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



shall not be canceled or materially changed without at least thirty- (30) day's prior written notice to Ritz-Carlton. Company shall deliver certificate of insurance and any renewals thereof to the Director of Human Resources or the General Manager for Ritz-Carlton.

7. **Indemnification**

    A.    Company will indemnify, defend, and hold harmless Ritz-Carlton and its parent company, directors, officers, employees, agents and affiliated partnerships or corporations under common contract from and against all demands, claims, actions, losses, judgment, costs and expenses (including reasonable attorneys' fees) imposed upon or incurred by Ritz-Carlton arising out of any of the following:

        1) Company's failure to comply with applicable laws, regulations, or orders;

        2) Any negligent act or omission or intentional misconduct on the part of Company, its officers, employees (including its employees on assignment), or agents;

        3) Breach of any obligation of Company contained in this Agreement;

        4) Any direct claim for workers' compensation benefits or personal injury claims for job-related bodily injury or death asserted against Ritz-Carlton by any of Company's employees or, in the event of death, by their personal representatives; or any liability of Ritz-Carlton under any federal or state law requiring notice to employees before termination or layoff from employment.

    B.    To facilitate the effective and efficient processing of claims by Company, Ritz-Carlton agrees to promptly notify Company of any claim it believes may be subject to these indemnification provisions and to share with Company any and all information it may have concerning such a claim. This indemnification shall survive any termination of this Agreement.



8.  **Payment and Billing**

    A.   Ritz-Carlton agrees to pay Company as per Attachment "A" for each hour
         worked by Company's employees.  For each labor hour worked over forty
         (40) hours per individual work week (and in California, over eight (8)
         hours per individual per work day), Ritz-Carlton agrees to pay Company
         one and a half (1-1/2) times the hourly rate, or rate agreed upon by both
         parties.

    B.   This fee will be billed weekly with payment due in 30 days.

9.  **Entire Agreement**

    A.   Both parties agree that this written Agreement is the total agreement
         between the parties and that no other document, subsequent modification,
         or oral agreements exist other than the terms stated herein.  Any
         subsequent modification/amendment to this Agreement shall be reduced to
         writing, signed by both parties, and attached hereto in order to be
         effective.

    B.   It is understood and agreed that the intent of this Agreement is to include
         everything necessary for the proper and orderly execution and completion
         of the services described herein.  Any/all services or material described in
         words which have a well known technical or trade meaning shall be
         interpreted in accordance with such technical or trade meaning.

10. **Notices**

    A.   Any notice, communication, request or reply ("Notice") made or accepted
         by either party to the other must be made in writing and shall be
         effectively given if addressed to the party to be notified and deposited in
         the United States Postal Service using certified or registered mail, postage
         prepaid with return receipt requested, or shipped by a recognized
         overnight courier service, or delivered in person to such party.  Any
         Notice mailed shall be effective, unless otherwise stated in this
         Agreement, from and after the expiration of three (3) days after it is
         deposited in a depository of the United States Postal Service or other
         overnight services as referred to above. Oral or any other notice given in
         any manner shall be effective only if and when received by the other party
         to be notified.  For purposes of Notice the addresses of the parties shall,
         until changed as hereinafter provided, be as follows:

---

02-HC-NIAGARA-PRODUCTION 000119

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts


**NIAGARA**
Cleaning Services, Inc.

|                     |                                          |
|---------------------|------------------------------------------|
| **If to Ritz-Carlton:** | **The Ritz-Carlton, Coconut Grove Hotel** |
|                     | 3300 SW 27th Avenue                      |
|                     | Miami, FL 33133                          |
|                     | Attn: Andrew Roberts                     |
| **With a copy to:** | **The Ritz-Carlton Hotel Company, L.L.C.** |
|                     | 4445 Willard Avenue, Suite 800           |
|                     | Chevy Chase, Maryland 20815              |
|                     | Attn: Associate General Counsel          |

|                   |                                    |
|-------------------|------------------------------------|
| **If to Company:** | **Niagara Cleaning Services Inc** |
|                   | 5220 NW 72nd Avenue #A2            |
|                   | Miami, FL 33166                   |
|                   | Attention: Angelica Restrepo       |

Or at any other address which may be given by either party to the other in the manner provided above.

11. **Paragraph Headings**

The paragraph headings throughout this Agreement are for convenience and reference only, and the words contained therein shall in no way be held to explain, modify, amplify, or aid in the interpretation, construction, or meaning of the provisions of this Agreement.

12. **Invalidity of Particular Provision**

If any term or provision of this Agreement, or the application thereof to any person or circumstance, shall, to any extent, be invalid or unenforceable, the remainder of this Agreement, the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be effected thereby, and each term and provision of this Agreement shall be valid and enforced to the fullest extent of the law.

13. **Choice of Law**

The parties agree that this Agreement shall be interpreted according to the laws of the State in which the Company's employees are working pursuant to this Agreement and that the jurisdiction for enforcement of this Agreement lies exclusively in that state. In the event litigation is initiated to enforce any part of this Agreement, the prevailing party is entitled to recover the expenses of litigation including attorney's fees.

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



14. **Licenses and Permits**

If any governmental license or permit is required for the proper and lawful conduct of Company's business or other activity carried on at Ritz-Carlton, or if a failure to procure such a license or permit might or would in any way affect the operations of Ritz-Carlton, then Company, at its expense, shall duly procure and thereafter maintain such license or permit and submit same for inspection by Ritz-Carlton. Company, at its sole cost and expense, will at all times comply with the requirements of each such license or permit. Company further agrees to comply promptly with all requirements or any legally constituted public authority and to abide by Ritz-Carlton's Rules and Regulations.

15. **Assignment and Subcontracts**

This Agreement may not be assigned or subcontracted by Company in whole or part without prior written consent of Ritz-Carlton. Ritz-Carlton may assign this Agreement without the prior written consent of Company to the owner of the Hotel, a purchaser of the Hotel, a subsequent operator of the Hotel or a lender or mortgagee of the Hotel.

16. **Trade Names**

Company expressly recognizes and acknowledges that its rights under this Agreement shall not confer upon Company any right in, or the right to use the Hotel's trademarks, the name "Ritz-Carlton", or the lion and crown logo associated with such trademarks (the "Marks"), and any use of the Marks for identification purposes shall only be done with the express prior written consent of Ritz-Carlton, and that any use of the Marks by Company and the goodwill associated with such use shall inure to Ritz-Carlton's benefit. Company acknowledges that "Ritz-Carlton" is a federally registered trademark of The Ritz-Carlton Hotel Company, L.L.C.

17. **Compliance with Laws**

Company shall comply with all applicable laws, statutes, rules, ordinances, codes, orders and regulations of all federal, state, local and other governmental and regulatory authorities and of all insurance bodies applicable to the Hotel premises in performing its obligations under this Agreement.

**Employment Laws.**

Company shall comply with Executive Order 11246, as amended, which is administered by the United States Department of Labor, Office of Federal Contract Compliance Programs (the "OFCCP"), with all relevant rules, regulations and orders pertaining thereto, with all other applicable federal, state and local non-discrimination and affirmative action laws, rules, regulations and orders (collectively, the "EEO/AA Requirements"), and with all wage and hour,

---

8.24.10 NIAGARA PRODUCTION 000121

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts


**NIAGARA**
Cleaning Services, Inc.

immigration and other employment laws. The equal opportunity clause of E.O. 11246 is hereby incorporated by reference. Company shall furnish upon the request of Manager or any appropriate federal, state or local regulatory body information and reports required by the EEO/AA Requirements. Company shall also comply with Executive Order 13201, as amended, which is also administered by the OFCCP, and with all relevant rules, regulations and orders pertaining thereto. The employee notice clause and all other provisions of 29 C.F.R., part 470, are hereby incorporated by reference. Company shall include the provisions of this Section in every subcontract or purchase order so that such provisions shall be binding upon each Company, subcontractor or vendor performing services or providing materials relating to this Agreement and the services provided pursuant to the terms hereof. Company agrees that it will, in response to a request from Manager, provide assurances that Company is complying with state and federal employment laws. Company further affirms its compliance with the immigration laws by signing the Certificate of IRCA compliance attached hereto as Exhibit D.

18. **Independent Company**
In its performance of this Agreement, Company will at all times act in its own capacity and right as an independent Company and nothing contained herein may be construed to make Company an agent, partner, or joint venturer of Ritz-Carlton. Neither Company nor its employees will have any claim to Ritz-Carlton's revenues from their work.

19. **Limitation of Liability.**
Company acknowledges and agrees that Ritz-Carlton's total liability under this Agreement shall be limited to Ritz-Carlton's interest in the Hotel. Company further acknowledges and agrees that neither Ritz-Carlton, nor any of its directors, officers, employees, affiliates, representatives or agents shall ever be personally liable to Company for any debts or liabilities arising under or related to this Agreement.

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



**NIAGARA**
Cleaning Services, Inc.

**WITNESS THE EXECUTION HEREOF,** in any number of counterpart copies, each of which counterpart copy shall be deemed an original for all purposes.

**NIAGARA CLEANING SERVICES INC.**

By:  ANGELICA RESTREPO / PRESIDENT

**THE RITZ-CARLTON HOTEL COMPANY, L.L.C.,**
D/B/A THE RITZ-CARLTON, _____

By: _____
Title:  General Manager

NIAGARA PRODUCTION 000123

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

# SERVICES AGREEMENT

THIS SERVICES AGREEMENT (this "Agreement") is made and entered into as of this 13th day of December, 2006, by and between **Niagara Cleaning Services, Inc.**, with a mailing address at 5220 NW 72nd Avenue, #A2, Miami, Florida 33166 ("Contractor"), and **The Ritz-Carlton Hotel Company, L.L.C.** (the "Ritz-Carlton") with offices at 4445 Willard Avenue, Suite 800, Chevy Chase, Maryland.

**RECITAL:**

Ritz-Carlton operates The Ritz-Carlton, Coconut Grove Hotel located at 3300 SW 27th Avenue, Miami Florida 33133 (the "Hotel") and desires to engage Contractor to provide first-class cleaning at the Hotel (the "Services") and Contractor desires to provide said Services.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties agree as follows:

1.     **Scope of Services.**    Contractor shall provide the Services to the Hotel as requested by the Hotel according to the specifications in **Exhibit A** attached hereto and made a part hereof. Any services not included in this Agreement shall be performed by Contractor only when previously requested by the Hotel in writing. Any additional cost for such extra services shall be previously agreed to in writing by both parties in advance of such extra services being performed.

2.     **Personal.**    Contractor shall provide adequate personnel to permit the timely completion of all work. Contractor acknowledges, understands and agrees that the Hotel is a luxury hotel catering to the finest clientele, and therefore, Contractor agrees at all times to conduct its operation in a manner conforming with the image and quality of service, cleanliness, and professionalism standards of Ritz-Carlton. When on the Hotel premises, or with Hotel guests or patrons, all employees of Contractor will wear proper identification and will conduct themselves in a manner consistent with the standards, quality, and image of the Hotel.

Contractor agrees that it shall not keep in its employ at, in or about the Hotel any employee and/or subcontractors who shall, upon reasonable non-discriminatory grounds, be objected to by Hotel. All of the Contractor's employees and/or subcontractors shall enter and exit the Hotel as directed by the Hotel and punch/sign in and out as directed by the General manager.

3.     **Term and Termination.**    The term of this Agreement shall become effective on the date entered above and shall continue in full force and effect until terminated as provided herein. Either party may at any time terminate this Agreement with or without cause by giving thirty (30) days prior written notice. In the event either party breaches a provision of this Agreement, the non-defaulting party may terminate this Agreement by giving ten (10) days prior written notice.

1

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

If the default is remedied prior to the end of such ten (10) day period, the notice of termination shall be null and void. This right of termination is in addition to whatever rights the non-defaulting party may have at law or in equity.

4. **Fee.** Contractor will charge the Hotel, $13,995.10, (thirteen thousand nine hundred and ninety-five dollars and ten cents), per month, for the Services as outlined in Exhibit A. Contractor will send to the Hotel a monthly invoice for the Services performed, which invoice shall be due and payable within forty-five (45) days of receipt.

5. **Insurance.** Contractor shall carry and maintain at its' own cost and expense the following:

    a.    Workers' compensation insurance including employers' liability that complies with the applicable workers' compensation laws governing the Contractor and all employees working for the Contractor.

    b.    Comprehensive general liability insurance including contractual liability and liability for bodily injury or property damage, with a combined single limit of not less than $3,000,000 each occurrence. Such insurance shall name Ritz-Carlton, Marriott International, Inc. and Grove Ocean Hotel, LLC ("Hotel Owner") as additional insureds.

    c.    Automobile liability insurance including all owned, non-owned, and hired vehicles used in conjunction with the Services for bodily injury or property damage with combined single limit of not less than $1,000,000 each occurrence. Such insurance shall name Ritz-Carlton, Marriott International, Inc. and Grove Ocean Hotel, LLC ("Hotel Owner") as additional insured.

All policies shall be specifically endorsed to provide that the coverages obtained by virtue of this Agreement will be primary and that any insurance carried by Ritz-Carlton and the Hotel Owner shall be excess and non-contributory. All policies shall be specifically endorsed to provide that such coverage shall not be canceled or materially changed without at least thirty (30) days prior written notice to the general manager of the Hotel. Prior to execution of this Agreement, a certificate of insurance evidencing the required insurance and additional insured endorsement shall be attached hereto as Exhibit C.

6. **Indemnification.** Contractor shall defend, indemnify, and hold harmless Ritz-Carlton, Marriott International, Inc., the Hotel, and the Hotel Owner, as well as their subsidiaries and affiliates, and their respective officers, directors, stockholders, agents, and employees (collectively the "Ritz-Carlton Indemnified Parties") from and against any and all actions, costs, claims, losses, expenses and/or damages, including attorneys' fees, arising out of or resulting from the performance of the Services including, but not limited to, any damage or loss to the

2

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

Hotel or Contractor's equipment. Contractor shall further defend, indemnify, and hold harmless the Ritz-Carlton Indemnified Parties from and against any and all actions, costs, claims, losses, expenses, and/or damages (i) for or arising out of any personal injuries to or the death of any of Contractor's employees working at the Hotel; or (ii) for personal injuries or death of any other person arising out of Contractor's Services or the presence of Contractor's employees at the Hotel. The foregoing indemnification obligations shall not apply to the extent of Ritz-Carlton's negligence or willful misconduct. The provisions contained in this paragraph shall survive the termination of this Agreement.

7.    <u>Licenses and Permits</u>. If any governmental license or permit is required for the proper and lawful conduct of Contractor's business or other activity carried on in or at the Hotel, or if a failure to procure such a license or permit might or would in any way affect the operations of the Hotel, then Contractor, at its expense, shall duly procure and thereafter maintain such license or permit and submit same for inspection by Ritz-Carlton. Contractor, at its sole cost and expense, will at all times comply with the requirements of each such license or permit. Contractor further agrees to comply promptly with all requirements of any legally constituted public authority and to abide by the Hotel's Rules and Regulations, attached hereto as <u>Exhibit D</u>, as the same may be modified from time to time in the Hotel's reasonable discretion.

8.    <u>Supplies and Equipment</u>. The Hotel, at its sole cost and expense, shall furnish all supplies, tools, equipment, and related expendables necessary or appropriate to provide the Services. Contractor shall furnish labor and administration of laundry department.

9.    <u>Independent Contractor</u>. Contractor is an independent contractor and all persons employed to furnish the Services are employees of Contractor and not of Ritz-Carlton or The Hotel. Contractor shall be solely responsible for the compliance with all federal and state laws including, but not limited to, withholding, income tax and F.I.C.A. and shall submit proof of compliance upon demand. Any and all payroll taxes, social security benefits, insurance requirements, or employment benefits of any kind whatsoever of Contractor or its employees shall be borne exclusively by Contractor and not Ritz-Carlton.

10.    <u>Assignment</u>. This Agreement may not be assigned by Contractor in whole or part without the prior written consent of Ritz-Carlton. This Agreement may be assigned by Ritz-Carlton to the owner of the Hotel, any subsequent owner or operator of the Hotel, or a lender or mortgagee of the Hotel without Contractor's consent.

11.    <u>Trademarks and Intellectual Property</u>. Contractor expressly recognizes and acknowledges that its rights under this Agreement shall not confer upon Contractor any right in, or the right to use the Hotel's trademarks, the name "Ritz-Carlton", or the lion and crown logo associated with such trademarks (the "Marks"), and any use of the Marks for identification purposes shall only be done with the express prior written consent of Ritz-Carlton, and that any use of the Marks by Contractor and the goodwill associated with such use shall inure to Ritz-

3

Ritz Coconut 00003

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

Carlton's benefit. Contractor acknowledges that "Ritz-Carlton" is a federally registered trademark of The Ritz-Carlton Hotel Company, L.L.C.

Contractor agrees and acknowledges that it shall not acquire any interest in the Marks or the goodwill associated with the Marks by virtue of this Agreement or Contractor's use of the Marks. Any work product generated as a result of the Services contemplated hereunder shall be deemed a "work for hire" owned exclusively by Ritz-Carlton. In any event, Contractor hereby assigns any right it may have in such work product to Ritz-Carlton.

12.   Notice. Any notice, communication, request, reply or advise ("Notice") in this Agreement provided or permitted to be given, made or accepted by either party to the other must be in writing and shall be effectively given if deposited in the United States mail, postpaid and certified and addressed to the party to be notified, with return receipt requested (mail services may include overnight Express Mail, Federal Express and UPS service), or delivered in person to such party. Any Notice mailed shall be effective, unless otherwise stated in this Agreement, from and after the expiration of three (3) days after it is deposited in a depository of the United States Postal Service or other overnight mail services as referred to above. Oral or any other notice given in any manner shall be effective only if and when received by the other party to be notified. For purposes of Notice the addresses of the parties shall, until changed as hereinafter provided, be as follows:

To Contractor: Niagara Cleaning Services, Inc.
5220 NW 72nd Avenue, #A2
Miami, Florida 33166
Attn: Angelica Restrepo

If to Hotel:     The Ritz-Carlton, Coconut Grove
3300 SW 27th Avenue
Miami, Florida
Attn: General Manager

With copy to:     The Ritz-Carlton Hotel Company, L.L.C.
4445 Willard Avenue, Suite 800
Chevy Chase, Maryland 20815
Attn: Associate General Counsel

Or at any other address which may be given by either party to the other in the manner provided above.

13.   Employees of Contractor.

a.     As the employer, Contractor will: (i) maintain all necessary personnel and payroll records for its employees, (ii) withhold from its employees' compensation any taxes, charges or other payroll deductions required by law; (iii) remit such taxes and charges to the appropriate government

4

Ritz Coconut 00004

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

Ritz Coconut 00005

entity; (iv) pay net wages and fringe benefits, if any, directly to employees; (v) provide for liability insurance as specified herein; and (vi) provide workers' compensation insurance coverage in amounts as required by law.

b.    The employees assigned under this Agreement shall remain employees of Contractor. Contractor's employees shall not be entitled to participate in any employee benefit plans of Ritz-Carlton, Marriott International, Inc. (including those employee benefit plans of any subsidiary or related entity) or the Hotel owner.

c.    Contractor shall cause each of its employees assigned to its site at the Hotel to sign **Exhibit B hereto.**

d.    All of Contractor's employees will be screened prior to being hired. The screening process shall include, but not be limited to: (i) completion of Contractor's application which shall provide for references, employment history and disclosure of criminal convictions; (ii) reference checks; and (iii) drug testing and criminal background checks, where required for the position. Contractor will provide safety training to all of its employees assigned to the Hotel.

e.    Contractor agrees to remove any of its employees at Ritz-Carlton's request. Contractor agrees to assist and cooperate with any investigation initiated by Ritz-Carlton involving any employee of Contractor assigned to Contractor's site within the Hotel.

14.    **Employment Laws.** Contractor shall comply with Executive Order 11246, as amended, which is administered by the United States Department of Labor, Office of Federal Contract Compliance Programs (the "OFCCP"), with all relevant rules, regulations and orders pertaining thereto, with all other applicable federal, state and local non-discrimination and affirmative action laws, rules, regulations and orders (collectively, the "EEO/AA Requirements"), and with all wage and hour, immigration and other employment laws. The equal opportunity clause of E.O. 11246 is hereby incorporated by reference. Contractor shall furnish upon the request of Ritz-Carlton or any appropriate federal, state or local regulatory body information and reports required by the EEO/AA Requirements. Contractor shall also comply with Executive Order 13201, as amended, which is also administered by the OFCCP, and with all relevant rules, regulations and orders pertaining thereto. The employee notice clause and all other provisions of 29 C.F.R., part 470, are hereby incorporated by reference. Contractor shall include the provisions of this Section in every subcontract or purchase order so that such provisions shall be binding upon each contractor, subcontractor or vendor performing services or providing materials relating to this Agreement and the services provided pursuant to the terms hereof. Contractor agrees that it will, in response to a request from Ritz-Carlton, provide assurances that Contractor is complying with state and federal employment laws.

15.    **Severability.** If any section, provision, or other portion of this Agreement is held to be illegal, invalid, or otherwise unenforceable by a court of competent jurisdiction ("Invalid Portion"), the parties hereto shall exercise best efforts to agree on legal, valid, and enforceable

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

substitute language that is as similar in effect to the Invalid Portion as possible. The remaining portion of this Agreement not declared illegal, invalid, or otherwise unenforceable shall, in any event, remain valid and effective for the remainder of the term of this Agreement unless the Invalid Portion goes to the essence of this Agreement.

16. <u>Counterparts</u>. This Agreement may be executed in any number of identical counterparts, each of which shall be deemed to be an original for all purposes, but all of which shall constitute one and the same agreement.

17. <u>Waiver</u>. A failure of either party to insist upon or enforce any term or provision or to exercise any right, option, or remedy of the Agreement, or to require at any time performance of any provision hereof, shall not be construed as a waiver of any such term or provision. No waiver by either party of any term or provision hereof shall be binding unless made in writing and signed by such party.

18. <u>Entire Agreement</u>. This Agreement contains the entire agreement between the parties, superseding any prior agreements and writings and may not be changed other than by an agreement in writing signed by the parties.

19. <u>Limitation of Liability</u>. Contractor acknowledges and agrees that Ritz-Carlton's total liability under this Agreement shall be limited to Ritz-Carlton's interest in the Hotel. Contractor further acknowledges and agrees that neither Ritz-Carlton, nor any of its directors, officers, employees, affiliates, representatives or agents shall ever be personally liable to Contractor for any debts or liabilities arising under or related to this Agreement.

20. <u>Governing Law</u>.

This Agreement will be governed by and construed in accordance with the laws of the State in which the Hotel is located.

21. <u>Entire Agreement</u>.

This Agreement, including the exhibits and attachments hereto, contains the entire agreement between the parties, superseding any prior agreements and writings and may not be changed other than by an agreement in writing signed by the parties.

Ritz Coconut 00006

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

IN WITNESS WHEREOF, the parties hereto have executed this Agreement the day and year first above written.

NIAGARA CLEANING SERVICES, INC.

By: _____

Title: President .

THE RITZ-CARLTON HOTEL COMPANY, L.L.C.,

By: _____ Dec 13, 2006

Title: General Manager

7

Ritz Coconut 00007

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

## EXHIBIT A

### Fees and Services:

Monthly contract fee for services specified below: $13,995.10, per month. This does not include the maintenance and/or repair of any equipment nor chemicals needed to finish scope of work as described.

### Objective of service:

- To maintain Hotel Linen Carts stocked with clean and folded linen / towels in a timely fashion.
- To provide the laundry department with sufficient man power and a qualified supervisor to deliver finished product.

### Management Services:

- Provide adequate schedule in accordance to Hotel needs
- Communication between Laundry supervisor and Hotel supervisor regarding damaged equipment, chemicals, and any unforeseen circumstances that may occur.
- Providing the Hotel services if necessary on an on call basis, for emergencies.

### Description of Process:

- Removal of soiled linen from laundry chute
- Classification of linen into carts
- Placement of classified linen into washers, using appropriate cycle, chemicals etc… in accordance to classification
- Soiled linen with stains are soaked with appropriate detergents, separately, (Cycle #20)
- Towels, bath robes and duvets are removed from washers and placed into dryers, (If there is more wet towels and robes than dryers are capable of handling, theses are placed into carts until a dryer becomes available)
- All other linen, including restaurant linens are removed from washers and placed into semi-automatic flatwork dryer/ironer with rear delivery of folded linen.
- Dry towels are removed from dryers and placed into automatic folder
- All folded linen and towels are placed into housekeeping carts

*#1 AL. Maintain daily record Of weight*
*#2 AL. Employee Must be trained On proper use of equipment*

Niagara Cleaning Services Inc is willing to provide transportation services, washing, drying and folding of linen elsewhere, if necessary, at an additional per service cost.

8

Ritz Coconut 00008

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

# EXHIBIT B

## NIAGARA CLEANING SERVICES INC.
**Employment Acknowledgment**

1. I understand that I am an employee of **NIAGARA CLEANING SERVICES INC.** ("Company"), and am on assignment with, but not an employee of, The Ritz-Carlton Hotel Company, LLC., or its parent company ("The Ritz-Carlton").

2. I understand that Company, not The Ritz-Carlton, will determine and communicate my pay rate to me, as well as any information about benefits to which I may be entitled from Company.

3. I understand that I will receive a paycheck from Company, not The Ritz-Carlton, and that this paycheck may be picked up at or distributed by Company.

4. I understand that as a Company employee, I am not eligible to participate in any benefits plans, policies, or programs established or administered by The Ritz-Carlton, including, among other things, vacation, holiday pay, health or life insurance, profit sharing, or stock purchase plans.

5. I waive any right or claim to participate in or receive benefits from The Ritz-Carlton for any time period during which I am an employee of Company.

6. I understand that any issues, concerns, or grievances relating to my assignment with The Ritz-Carlton should be addressed to Company.

7. I understand that Company will handle routine personnel matters, such as reference and credit checks. There will be no common personnel records between Company and The Ritz-Carlton.

I have read and understand the above policies and guidelines.

Company Employee Signature: _____

Date: _____

9

Ritz Coconut 00009

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

**EXHIBIT C**

**CERTIFICATE OF INSURANCE
SHOWING THE REQUIRED ADDITIONAL INSUREDS**

10

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts

Ritz Coconut 00010

# EXHIBIT D

## HOTEL RULES AND REGULATIONS

1.  The rights of the Contractor in the sidewalks, entrances, corridors, elevators and escalators of the Hotel are limited to entrance to and exit from the Hotel premises for the Contractor and its employees, licensees and invitees.

2.  Ritz-Carlton may without liability to Contractor refuse admission to the Hotel or buildings to any person not properly identified or whose presence shall in the judgment of Ritz-Carlton be prejudicial to the interests of the Hotel or its guests, tenants or invitees.

3.  The Contractor shall not use on the Hotel premises food, beverage, linen or similar services from any party not authorized by Ritz-Carlton in writing to furnish such services.

4.  Contractor shall pay for repair of any damage caused by Contractor or its employees, licensees, guests or invitees to the public portions of the Hotel or to any portions used in common with other guests, tenants or invitees.

5.  Ritz-Carlton shall have the right to prescribe the weight and position of safes and other objects of excessive weight. No electrical or electronic equipment or appliances of any kind may be installed or operated in the Hotel premises without Ritz-Carlton's prior written consent.

6.  No disturbing noise, animals or inflammable or otherwise dangerous objects or materials shall be brought into or kept in the Hotel premises.

7.  No locks or bolts of any kind shall be changed or added to any of the doors or windows in the Hotel premises without express permission from Ritz-Carlton. Duplicate keys for the Hotel premises shall be procured only from Ritz-Carlton for a reasonable charge. All keys to the Hotel premises shall be delivered to Ritz-Carlton upon the termination of this Agreement.

8.  Ritz-Carlton reserves the right to rescind, alter or waive any rule or regulation prescribed when deemed desirable by Ritz-Carlton for its, or the Hotels' best interest or safety.

11

Ritz Coconut 00011

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts





6/22/2010

COPY (1-2)

## SERVICE AGREEMENT

THIS SERVICE AGREEMENT (this "Agreement") is made and entered into as of this _____, day of _____, 200_, by and between **Niagara Cleaning Services, Inc.,** (A Florida Corporation), doing business at 5220 NW 72nd Avenue, #2, Miami, Florida 33166 (**"Contractor"**), and **FSM HOTEL, L.L.C. d/b/a – Four Seasons Hotel Miami, (The Hotel")** doing business at: 1435 Brickell Avenue, Miami, FL 33133

## RECITAL

**FSM Hotel LLC** operates The Four Seasons Hotel Miami located at 1435 Brickell Avenue, Miami, FL 33133, (the "Hotel") and desires to engage **Contractor** to provide first-class Laundry Administration at the Hotel (the "Services") and Contractor desires to provide said Services.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties agree as follows:

1. **Scope of Services.**
   Contractor shall provide the Services to the Hotel as requested by the Hotel according to the specifications in **Exhibit A** attached hereto and made a part hereof. Any services not included in this Agreement shall be performed by Contractor only when previously requested by the Hotel in writing. Any additional cost for such extra services shall be previously agreed to in writing by both parties in advance of such extra services being performed.

2. **Personnel.**
   Contractor shall provide adequate personnel to permit the timely completion of all work. Contractor acknowledges, understands and agrees that the Hotel is a luxury hotel catering to the finest clientele, and therefore, Contractor agrees at all times to conduct its operation in a manner conforming with the image and quality of service, cleanliness, and professionalism standards of The Four Seasons Hotel Miami. When on the Hotel premises, or with Hotel guests or patrons, all employees of Contractor will wear proper identification and will conduct themselves in a manner consistent with the standards, quality, and image of the Hotel. Contractor agrees that it shall not keep in its employ at, in or about the Hotel any employee and/or subcontractors who shall, upon reasonable non-discriminatory grounds, be objected to by Hotel. All of the Contractor's employees and/or subcontractors shall enter and exit the Hotel as directed by the Hotel and punch/sign in and out as directed by the general manager.

PLAINTIFF'S
EXHIBIT
9 for JV
AGS 6/25/10

NIAGARA PRODUCTION 000048

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



3. **Term and Termination.**
The term of this Agreement shall become effective on the date entered above and shall continue in full force and effect until terminated as provided herein. Either party may at any time terminate this Agreement with or without cause by giving thirty (30) days prior written notice. In the event either party breaches a provision of this Agreement, the non-defaulting party may terminate this Agreement by giving ten (10) days prior written notice. If the default is remedied prior to the end of such ten (10) day period, the notice of termination shall be null and void. This right of termination is in addition to whatever rights the non-defaulting party may have at law or in equity.

4. **Fee.**
Contractor will bill Hotel an hourly rate for hours worked providing Services as outlined in **Exhibit A**. Contractor will submit to Hotel an invoice on a bi-weekly schedule payable net 30 days of receipt.

5. **Insurance.**
Contractor shall carry and maintain at its' own cost and expense the following:

   a. Workers' compensation insurance including employers' liability that complies with the applicable workers' compensation laws governing the Contractor and all employees working for the Contractor.

   b. Comprehensive general liability insurance including contractual liability and liability for bodily injury or property damage, with a combined single limit of not less than $3,000,000 each occurrence. Such insurance shall name FSM Hotel LLC & The Four Seasons Hotel Miami ("Hotel Owner") as additional insured.

   c. Automobile liability insurance including all owned, non-owned, and hired vehicles used in conjunction with the Services for bodily injury or property damage with combined single limit of not less than $1,000,000 each occurrence. Such insurance shall name FSM Hotel LLC & The Four Seasons Hotel Miami ("Hotel Owner") as additional insured.

All policies shall be specifically endorsed to provide that the coverage obtained by virtue of this agreement will be primary and that any insurance carried by Four Seasons Hotel Miami and Hotel Owner shall be excess and non-contributory. All policies shall be specifically endorsed to provide that such coverage shall not be canceled or materially changed without at least thirty (30) days prior written notice to the general manager of the Hotel. Prior to execution of this Agreement, a certificate of insurance evidencing the required insurance and additional insured endorsement shall be attached hereto as **Exhibit E**.

---

NIAGARA PRODUCTION 000049

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



6. **Indemnification.**
Contractor shall defend, indemnify, and hold **FSM Hotel LLC & The Four Seasons Hotel Miami**, as well as their subsidiaries and affiliates, and their respective officers, directors, stockholders, agents, and employees (collectively the "Four Seasons Indemnified Parties") from and against any and all actions, costs, claims, losses, expenses and/or damages, including attorneys' fees, arising out of or resulting from the performance of the Services including, but not limited to, any damage or loss to the Hotel or Contractor's equipment. Contractor shall further defend, indemnify, and hold harmless the Four Seasons Indemnified Parties from and against any and all actions, costs, claims, losses, expenses, and/or damages (i) for or arising out of any personal injuries to or the death of any of Contractor's employees working at the Hotel; or (ii) for personal injuries or death of any other person arising out of Contractor's Services or the presence of Contractor's employees at the Hotel. The foregoing indemnification obligations shall not apply to the extent of The Four Seasons' negligence or willful misconduct. The provisions contained in this paragraph shall survive the termination of this Agreement.

7. **Licenses and Permits.**
If any governmental license or permit is required for the proper and lawful conduct of Contractor's business or other activity carried on in or at the Hotel, or if a failure to procure such a license or permit might or would in any way affect the operations of the Hotel, then Contractor, at its expense, shall duly procure and thereafter maintain such license or permit and submit same for inspection by The Four Seasons. Contractor, at its sole cost and expense, will at all times comply with the requirements of each such license or permit. Contractor further agrees to comply promptly with all requirements of any legally constituted public authority and to abide by the Hotel's Rules and Regulations, attached hereto as **Exhibit D**, as the same may be modified from time to time in the Hotel's reasonable discretion.

8. **Supplies and Equipment.**
The Hotel, at its sole cost and expense, shall furnish all supplies, tools, equipment, and related expendables necessary or appropriate to provide the Services. Contractor shall furnish labor and administration of laundry department.

9. **Independent Contractor.**
Contractor is an independent contractor and all persons employed to furnish the Services are employees of Contractor and not of The Four Seasons or The Hotel. Contractor shall be solely responsible for the compliance with all federal and state laws including, but not limited to, withholding, income tax and F.I.C.A. and shall submit proof of compliance upon demand. Any and all payroll taxes, social security benefits, insurance requirements, or employment benefits of any kind whatsoever.

NIAGARA PRODUCTION 000050

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



10. **Assignment.**

This Agreement may not be assigned by Contractor in whole or part without the prior written consent of The Four Seasons. This Agreement may be assigned by The Four Seasons to the owner of the Hotel, any subsequent owner, or operator of the Hotel; or a lender or mortgagee of the Hotel; without Contractor's consent.

11. **Trademarks and Intellectual Property.**

Contractor expressly recognizes and acknowledges that its rights under this Agreement shall not confer upon Contractor any right in, or the right to use the Hotel's trademarks, the name *"Four Seasons"*, or the *Tree Device* and *REGENT* associated with such trademarks (the "Marks"), and any use of the Marks for identification purposes shall only be done with the express prior written consent of The Four Seasons, and that any use of the Marks by Contractor and the goodwill associated with such use shall inure to Four Seasons' benefit. Contractor acknowledges that *"Four Seasons"* is a federally registered trademark of FSM LLC, Four Seasons Hotel.

Contractor agrees and acknowledges that it shall not acquire any interest in the Marks or the goodwill associated with the Marks by virtue of this Agreement or Contractor's use of the Marks. Any work product generated as a result of the Services contemplated hereunder shall be deemed a "work for hire" owned exclusively by Four Seasons. In any event, Contractor hereby assigns any right it may have in such work product to Four Seasons.

12. **Notice.**

Any notice, communication, request, reply or advise ("Notice") in this Agreement provided or permitted to be given, made or accepted by either party to the other must be in writing and shall be effectively given if deposited in the United States mail, postpaid and certified and addressed to the party to be notified, with return receipt requested (mail services may include overnight Express Mail, Federal Express and UPS service), or delivered in person to such party. Any Notice mailed shall be effective, unless otherwise stated in this Agreement, from and after the expiration of three (3) days after it is deposited in a depository of the United States Postal Service or other overnight mail services as referred to above. Oral or any other notice given in any manner shall be effective only if and when received by the other party to be notified.

6.24.10 NIAGARA PRODUCTION 000051

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



**NIAGARA**
Cleaning Services, Inc.

For purposes of Notice the addresses of the parties shall, until changed as hereinafter provided, be as follows:

To Contractor:  **Niagara Cleaning Services, Inc.**
5220 NW 72nd Avenue, #A2
Miami, Florida 33166
Attn: Angelica Restrepo

If to Hotel:  **The Four Seasons Hotel**
1475 Brickell Avenue
Miami, Florida 33133
Attn: General Manager

...or at any other address which may be given by either party to the other in the manner provided above.

13.  **Employees of Contractor.**

a.  As the employer, Contractor will: (i) maintain all necessary personnel and payroll records for its employees, (ii) withhold from its employees' compensation any taxes, charges or other payroll deductions required by law; (iii) remit such taxes and charges to the appropriate government entity; (iv) pay net wages and fringe benefits, if any, directly to employees; (v) provide for liability insurance as specified herein; and (vi) provide workers' compensation insurance coverage in amounts as required by law.

b.  The employees assigned under this Agreement shall remain employees of Contractor. Contractor's employees shall not be entitled to participate in any employee benefit plans of The Four Seasons Miami, (including those employee benefit plans of any subsidiary or related entity) or the Hotel owner.

---

5220 NW 72 Ave. Bay # 2   Miami, Fl 33166  •  Ph.: 305.437.9812  •  Fax. 305.468.0116
www.niagaracleaning.com  •  E-mail: ncsdoral@bellsouth.net

524-10 NIAGARA PRODUCTION 000052

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



**NIAGARA**
Cleaning Services, Inc.

c.  Contractor shall cause each of its employees assigned to its site at the Hotel to sign **Exhibit B** hereto.

d.  All of Contractor's employees will be screened prior to being hired. The screening process shall include, but not be limited to: (i) completion of Contractor's application which shall provide for references, employment history and disclosure of criminal convictions; (ii) reference checks; and (iii) drug testing and criminal background checks, where required for the position. Contractor will provide safety training to all of its employees assigned to the Hotel.

e.  Contractor agrees to remove any of its employees at Four Seasons' request. Contractor agrees to assist and cooperate with any investigation initiated by The Four Seasons Hotel Miami involving any employee of Contractor assigned to Contractor's site within the Hotel.

14. **Employment Laws.**
Contractor shall comply with Executive Order 11246, as amended, which is administered by the United States Department of Labor, Office of Federal Contract Compliance Programs (the "OFCCP"), with all relevant rules, regulations and orders pertaining thereto, with all other applicable federal, state and local non-discrimination and affirmative action laws, rules, regulations and orders (collectively, the "EEO/AA Requirements"), and with all wage and hour, immigration and other employment laws. The equal opportunity clause of E.O. 11246 is hereby incorporated by reference. Contractor shall furnish upon the request of The Four Seasons or any appropriate federal, state or local regulatory body information and reports required by the EEO/AA Requirements. Contractor shall also comply with Executive Order 13201, as amended, which is also administered by the OFCCP, and with all relevant rules, regulations and orders pertaining thereto. The employee notice clause and all other provisions of 29 C.F.R., part 470, are hereby incorporated by reference. Contractor shall include the provisions of this Section in every subcontract or purchase order so that such provisions shall be binding upon each contractor, subcontractor or vendor performing services or providing materials relating to this Agreement and the services provided pursuant to the terms hereof. Contractor agrees that it will, in response to a request from The Four Seasons, provide assurances that Contractor is complying with state and federal employment laws.

NIAGARA PRODUCTION 000053

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts


**NIAGARA**
Cleaning Services, Inc.

15.   **Severability.**
If any section, provision, or other portion of this Agreement is held to be illegal, invalid, or otherwise unenforceable by a court of competent jurisdiction ("Invalid Portion"), the parties hereto shall exercise best efforts to agree on legal, valid, and enforceable substitute language that is as similar in effect to the Invalid Portion as possible. The remaining portion of this Agreement not declared illegal, invalid, or otherwise unenforceable shall, in any event, remain valid and effective for the remainder of the term of this Agreement unless the Invalid Portion goes to the essence of this Agreement.

16.   **Counterparts.**
This Agreement may be executed in any number of identical counterparts, each of which shall be deemed to be an original for all purposes, but all of which shall constitute one and the same agreement.

17.   **Waiver.**
A failure of either party to insist upon or enforce any term or provision or to exercise any right, option, or remedy of the Agreement, or to require at any time performance of any provision hereof, shall not be construed as a waiver of any such term or provision. No waiver by either party of any term or provision hereof shall be binding unless made in writing and signed by such party.

18.   **Entire Agreement.**
This Agreement contains the entire agreement between the parties, superseding any prior agreements and writings and may not be changed other than by an agreement in writing signed by the parties.

19.   **Limitation of Liability.**
Contractor acknowledges and agrees that The Four Seasons Hotel total liability under this Agreement shall be limited to The Four Seasons Hotel Miami interest in the Hotel. Contractor further acknowledges and agrees that neither The Four Seasons, nor any of its directors, officers, employees, affiliates, representatives or agents shall ever be personally liable to Contractor for any debts or liabilities arising under or related to this Agreement.

20.   **Governing Law.**
This Agreement will be governed by and construed in accordance with the laws of the State in which the Hotel is located.

21.   **Entire Agreement.**
This Agreement, including the exhibits and attachments hereto, contains the entire agreement between the parties, superseding any prior agreements and writings and may not be changed other than by an agreement in writing signed by both parties.

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



**IN WITNESS WHEREOF, the parties hereto have executed this Agreement the day and year first above written;**

**NIAGARA CLEANING SERVICES, INC.**

By: _____

Title: _____

**FSM HOTEL, LLC**
**d/b/a The Four Seasons Hotel Miami**

By: _____
Title:  General Manager

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts


# NIAGARA
Cleaning Services, Inc.

## EXHIBIT A

### Objective of service:

- To provide the laundry department with sufficient man power and a qualified supervisor to deliver finished product
- To provide the Hotel a cost effective laundry administration in accordance to Hotel occupancy and events, calculating the correct amount of workforce needed to deliver scope of work efficiently.
- To maintain Hotel Linen Carts stocked with clean and folded linen / towels, etc… in a timely fashion.

### Management Services:

- Provide adequate schedule in accordance to Hotel needs and occupation levels
- Communication between Laundry supervisor and Hotel supervisor regarding damaged equipment, chemical levels, and any unforeseen circumstances that may occur.
- Providing the Hotel services if necessary on an on call basis, for emergencies.
- Logging of all occurrences within laundry department on daily basis.

### Description of Process:

- Removal of soiled linen from laundry chute
- Classification of linen into carts, (Sorting)
- Placement of classified linen into washers, using appropriate cycle, chemicals etc… in accordance to classification
- Soiled linen with stains are soaked with appropriate detergents, separately, (Cycle #20)
- Towels, bath robes and duvets are removed from washers and placed into dryers, (If there is more wet towels and robes than dryers are capable of handling, theses are placed into carts until a dryer becomes available)
- All other linen, including restaurant linens are removed from washers and placed into semi-automatic flatwork dryer/ironer with rear delivery of folded linen.
- Dry towels are removed from dryers and placed into automatic folder
- All folded linen and towels are placed into housekeeping carts and delivered as indicated

---

CP-24 TO NIAGARA PRODUCTION 000056

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts



**NIAGARA**
Cleaning Services, Inc.

**Fees and Services:**

All services provided in Laundry Department will be billed as follows:

Laundry Attendants:             per man hour
Laundry Supervisor:  '          per man hour

Services based on a double shift consisting of:
           1st shift – 7 Laundry attendants / 1 working Supervisor
           2nd shift- 9 Laundry attendants / 1 working Supervisor

In compliance with Florida regulated labor laws; all hours worked over 40 hours in a designated work week of seven, (7) days are considered overtime and paid at time and a half to Company employees; billed to Hotel at an hourly rate of:

Laundry Attendants:         .. per man hour OT
Laundry Supervisor:         . . per man hour OT

Laundry schedules will vary depending on Hotel occupancy and season. Supervisors will be in charge of calculating the amount of hours needed each week based on weekly reports of future Hotel Occupancy and Events. Supervisors will inform Hotel Management of any damaged equipment or lack of supplies, beyond Company's control, since this will delay the process and increment hours worked, ultimately raising costs for Hotel.

Niagara Cleaning Services Inc is not responsible for neither costs related to supplies and chemicals nor maintenance and/or repairs equipment. needed to finish scope of work as described.

**Transportation services, washing, drying and folding of linen elsewhere, is available at an additional cost through one of Niagara Cleaning Services Inc partner companies.**

EXHIBIT 3
Corp. Rep. Depo.
Composite Exhibit of Contracts